WOMEN'S CHRISTIAN ASSOCIATION v. KANSAS CITY et al.; CAMPBELL et al., Appellants.

147   103
151   242
151   258
151   267

### In Banc, December 13, 1898.

1. **Equity Courts:** JURISDICTION: TRUSTS: CHARITABLE DEVISES. Equity courts have authority to mold the form of a charitable devise or gift to suit the necessity of changed conditions and surroundings; and when it has been found beneficial to the charity to sell its lands and vest the proceeds in other funds or in a different manner, they have authority to direct such sale and investment, if by so doing the gift is not diverted from its original purpose.

2. ———: ———: ———: ———: REASONABLE NECESSITY. It is not necessary that it be absolutely physically impossible to carry out the exact plan of the will creating the trust, before a court of equity is authorized to deviate therefrom. A reasonable necessity for its interference will warrant an order or decree relating to the manner of using the charitable gift.

3. ———: ———: ———: ———: DIFFERENT ORGANIZATION. An equity court has no jurisdiction to make a will for the testate, nor to substitute an outside charity for the one created by the will. But where the details of a valid charity established by the will can not be carried out; where it is provided in the will that an orphan asylum be erected by the executor on certain land, which because of the growth and development of a city has become unsuitable for the purpose, and after twenty years and the complete administration of the testate's estate, the executor has no money with which to erect the buildings, and the land if sold will not yield enough to buy another site and to construct them; and where, if some action is not taken by the court the charity is likely to be defeated because of continuous inaction on the part of those having the trust funds in charge, the court has jurisdiction to decree that the land be sold, and the proceeds turned over to another charitable organization as trustee, if by so doing the original design and purpose of the donor may be surely and readily effected. And this may be done although such outside organization is a stranger to the will, if all the interested parties, including the Attorney-General, are made parties to the proceedings.

4. ———: ———: ———: ———: ——— : FEES OF PLAINTIFF'S ATTORNEY. As such stranger to the will, unaided by the Attorney-General, has no standing in court to maintain such suit, an allowance of a fee in favor of plaintiff's attorney, to be paid out of the proceeds of the land sold, is error.

5. ———: ———: ———: ———: PARTIES TO SUCH ACTION: HEIRS. In such an action the heirs of the testate are not necessary parties.

6. Trust Estate: INTEREST OF HEIRS. Where lands have been donated and become vested in a trustee for charitable uses, neither the donor nor his heirs can ever reclaim it. All their rights thereto and interest therein are forever gone.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED (*with directions*).

SCARRITT, VAUGHAN, GRIFFITH & JONES for appellants.

(1) The English *cy pres* doctrine has no place in the jurisprudence of this State. The control of American courts of equity over charitable trusts is identical in the theory of its application with their power over other trusts. When a general charitable intent of a donor is apparent, but is not defined, particular and circumscribed, the chancellor may go to a great length to prevent the failure of and to carry out such intent, and the theory of the exercise of this power is what we know as the American *cy pres* doctrine. Howe v. Wilson, 91 Mo. 49; Vidal v. Girard's Ex'rs, 2 How. 127; Beekman v. Bonsor, 23 N. Y. 308; Fountain v. Ravenal, 17 How. 369; Green v. Allen, 5 Humphrey, 198; Grimes' Ex'rs v. Harmon, 35 Ind. 198; Baptist Ass'n v. Hart, 4 Wheat. 47. (2) No sufficient facts are stated in plaintiff's petition to move a court of equity to grant the decree made by the court below: *First.* Plaintiff is a stranger to the will and has no interest in the subject-matter of it. Appeal of Gumbert, 1 Atl. Rep. 437; Bailey v. Briggs, 56 N. Y. 407; Green v. Blackwell, 35 Atl. Rep. 375; First Baptist Church v. Robberson, 71 Mo. 333; Little v. Thorne, 93 N. C. 69; Woodruff v. Cook, 47 Barb. 304; White v. Haynes, 33 Ind. 540; 27 Am. and Eng. Ency. of Law [1 Ed.], 278. *Second.* The Attorney-General is without authority to act in the premises when there are other and proper parties capable of suing. Vidal v. Girard's Ex'rs, 2 How. 127; 2 Perry on Trusts [3 Ed.],

sec. 732; Beekman v. Bonsor, 23 N. Y. 308. *Third.* If the Attorney-General is a proper party plaintiff, he does not in fact prosecute this cause. R. S. 1889, sec. 1994. (3) If the intention of the donor of a charity can be carried out it must be done, and the *cy pres* doctrine, English or American, can not be invoked. The court will not found a charity nor devise a new scheme. Bascom v. Albertson, 34 N. Y. 594; Tilden v. Green, 130 N. Y. 29; Barkley v. Donnelly, 112 Mo. 561. (4) The intention of the testatrix can be carried out. This court has so declared. Barkley v. Donnelly, 112 Mo. 561; Charter of Kansas City, art. 1, sec. 1. (5) The bequest under consideration is a particular one, ordered by the testatrix to be carried out in a definite and prescribed manner, for a certain designated purpose "and none other." Even the American *cy pres* doctrine should not be invoked in this cause. Campbell v. Kansas City, 102 Mo. 346; Teel v. Bishop of Derry, 47 N. E. Rep. 422; Bispham's Prin. of Eq. [4 Ed.], sec. 129; Hopkins v. Grimshaw, 165 U. S. 353; Bascom v. Albertson, 34 N. Y. 594; 2 Perry on Trusts [4 Ed.], sec. 726; 1 Jarman on Wills [5 Am. Ed.], p. 454. (6) The heirs of Mary A. Troost are necessary parties defendant. Second Univ. Soc. v. Dugan, 5 Atl. Rep. 415; Academy v. Clemens, 50 Mo. 170; Barkley v. Donnelly, 112 Mo. 561. (7) A court of equity will not summarily remove a competent trustee, and appoint a new one, unless his death, inability or refusal to act, or an abuse of trust be alleged and proven. 1 Perry on Trusts [3 Ed.], secs. 275, 277; State ex rel. v. Adams, 44 Mo. 570; Harvard College v. Theolog. Soc., 3 Gray, 280. (8) Kansas City is a competent trustee, and no cause is alleged or shown for its removal. Charter of Kansas City, art. 1, sec. 1; Barkley v. Donnelly, 112 Mo. 561; Chambers v. St. Louis, 29 Mo. 543; Vidal v. Girard's Ex'rs, 2 How. 127.

JUSTIN D. BOWERSOCK and DOBSON & McCUNE for respondent.

(1) The heirs of testatrix are not necessary parties defendant. Barkley v. Donnelly, 112 Mo. 561; Goode v. McPherson, 51 Mo. 126; Academy v. Clemens, 50 Mo. 167. (2) The Attorney-General need not be made a party plaintiff, but is properly joined as defendant. Harvard College v. Society for Promotion, etc., 3 Gray, 280. (3) The Attorney-General has authority to act. Perry on Trusts [1 Ed.], sec. 732; 2 Pomeroy on Eq. Jur. [2 Ed.], sec. 1096; Parker v. May, 5 Cush. 336; Theological Society v. Attorney-General, 135 Mass. 285; Attorney-General v. Garrison, 101 Mass. 223; Jackson v. Phillips, 14 Allen, 579. (4) The intention of the donor can not be exactly carried out in its details. *First,* Fry place is unsuitable; *second,* there is no fund for constructing the asylum; *third,* the total estate now in existence is insufficient to buy a new site and build the asylum. (5) A court of equity has power to carry out the main object of a charitable trust, though some deviation from the exact plan proposed be necessary. This is sometimes called the *cy pres* power, but in this country is simply the general jurisdiction of courts of chancery, however named. Moggridge v. Thackwell, 7 Vesey, 36; 2 Pomeroy on Eq. Jur. [2 Ed.], sec. 1027; Jackson v. Phillips, 14 Allen, 539; Brown v. Baptist Church, 9 R. I. 177; Barr v. Weld, 24 Pa. St. 84; Hill v. McGarvey, 19 S. W. Rep. 586; Franklin v. Armfield, 2 Sneed. 305; Stanley v. Colt, 5 Wall. 119. This is settled in this state. Chambers v. St. Louis, 29 Mo. 543; Academy v. Clemens, 50 Mo. 167; Goode v. McPherson, 51 Mo. 126; Howe v. Wilson, 91 Mo. 45; Historical Society v. Academy of Science, 94 Mo. 459; Barkley v. Donnelly, 112 Mo. 561; Sappington v. School Fund Trustees, 123 Mo. 32; Russell v. Allen, 107 U. S. 163.

ROBINSON, J.—The Women's Christian Association of Kansas City, a corporation organized under the laws of this State for charitable purposes, to have effectuated and carried out a trust established by the last will of Mary A. Troost, who died in Kansas City in the year 1872, instituted the following proceedings in the circuit court of Jackson county:

"To the Honorable, the Judge of the Circuit Court of Jackson County, sitting at Independence, Missouri:

"Your petitioner, the above-named plaintiff, the Women's Christian Association of Kansas City, Missouri, respectfully represents and states, that it is a corporation, duly organized and incorporated under the laws of the State of Missouri, for purely charitable purposes; that it was incorporated under the provisions of chapter 70 of the General Statutes, then in force, by a decree of the circuit court of Jackson county, Missouri, made and entered on the 25th day of May, 1877; and a certificate of incorporation was, on said day, duly issued to your petitioner, and it has ever since been, and is now, exercising its corporate powers for charitable purposes, as authorized by its articles of association and said decree of incorporation; that the object of its incorporation was, and is, as stated in its articles of association: "First, the maintenance of an industrial home for children; and, second, to afford temporary relief to suffering indigent women;" that it is provided with the usual officers required for such corporations, and is also provided with a board of trustees, in accordance with the requirements of its articles of association, which board of trustees now consists of the following-named residents of Kansas City, Missouri: M. W. St. Clair, S. B. Armour, Dr. F. B. Nofsinger, L. R. Moore, and M. A. Potts. The legal title to all real estate which may come to said corporation, by the terms of the articles of association, vests in said trustees to be held in

trust for said corporation.. The officers of said association for the present year are as follows: Mrs. S. B. Armour, president; Mrs. Kate D. Rhodes and Mrs. Susan A. Morgan, vice-presidents; Mrs. M. A. Potts, treasurer; Mrs. John G. Groves, secretary; and Mrs. D. G. Alderson, corresponding secretary.

"That the defendant Kansas City is a municipal corporation organized under the laws of Missouri; that the defendant Edward C. Crow, is the duly elected, qualified and acting Attorney-General of the State of Missouri, whose duty it is to protect the public interests in all matters pertaining to devises and donations for charitable purposes when the courts are called upon to act in regard thereto.

"That the defendant Fred C. Hey is the duly appointed and acting administrator *de bonis non* of the estate of said Mary A. Troost, deceased, with the will annexed.

"Your petitioner further says that it has for a long time in the past maintained, and is now maintaining an industrial home for children, who are destitute, or in need of charitable assistance; that it owns fifty feet of ground on Charlotte street, near Twelfth, with a three story brick building thereon, numbered 1115 Charlotte street, which is now being used for such children's home; and there are now being supported, cared for, and educated, by your petitioner, in said home about thirty-seven poor and destitute children, both male and female; said ground and building are worth about $10,000; and your petitioner is possessed of sufficient means to support said home, as at present constituted, but has not sufficient means to build a larger or more commodious or more suitable home for such children, as it is desirous of doing, and as the necessities of Kansas City require. The other property of which your petitioner is possessed consists of an endowment fund for the support of its children's home, of $31,000, which has been donated to it by charita-

ble and generous citizens of Kansas City for that purpose; that the same is now loaned out on good security, and is yielding a net annual income of $2,170. That the location of said children's home on Charlotte street, is not in any respect well adapted to the needs of such a home. And your petitioner, the plaintiff, desires and intends to either convert said building into a home for the aged and helpless, or sell the same, and use the proceeds for such purpose.

"Your petitioner further states and represents that Mrs. Mary A. Troost, who departed this life in Kansas City, Missouri, on the — day of January, 1872, died testate, and her last will and testament was duly admitted to probate in the probate court of Jackson county, Missouri, on the 13th day of January, 1872, a full copy of which said last will is herewith filed and made a part of this petition; that by said last will the said Mary A. Troost attempted to, and did, establish a charity known as the "Gilliss Orphan Asylum," and to be located on a tract of land in Kansas City, Missouri, belonging to her, and known as the "Fry Place," and hereinafter more definitely described; and also for the purpose of maintaining said orphan asylum when constructed out of the proceeds of her estate, and for the purpose of commemorating the name of her uncle, William Gilliss, deceased, the said testatrix also provided, in said will, for the building of an opera house in said Kansas City, Missouri, to be known as the Gilliss Opera House; and among the numerous provisions in said will, the clauses or items thereof relating to said orphan asylum and said opera house, and which are necessary to be considered here are as follows:

" Item Eighteenth. I give and devise to the City of Kansas the parcel of land lying on the Shawnee road, bounded on the north by the land of the Jarbeau's heirs, on the south by the Shawnee road, west by Coleman's land and east by Jordan, containing from five to ten acres of land and called

the Fry place, to hold the same in trust, however, for the following uses and none other; for a home and place for the maintenance and education of poor children, and the same shall be called the Gilliss Orphan Asylum.

"'Item Nineteenth. I give and devise to John Campbell, William S. Gregory and Bernard Donnelly, all of the City of Kansas, Lots 209 and 210 in Block 21, in the old town of the City of Kansas, County of Jackson, and State of Missouri, in trust, however, that they and their successors in this trust shall, when the Gilliss Opera House is built, keep the same in repair, well insured, and pay all taxes and other necessary and proper expenses connected with the management of the same and that the net proceeds arising therefrom by way of rents or otherwise, use in keeping up the Gilliss Orphan Asylum hereinbefore provided for and in carrying out the beneficial object and design of that institution.

"'In case and so often as any one or more of said trustees now appointed, or any one or more of the trustees hereinafter appointed shall die or refuse to accept this trust or refuse to act, or shall wish to retire, or shall cease to reside in the county of Jackson, and State of Missouri, or refuse to discharge the duties imposed upon him or her or become intemperate or insane, or for any reason become unfit to discharge the duties of such trustee with fidelity and good judgment, then and in either or any of such events, the office and position of such trustee or trustees shall be vacant and the title by such trustee held shall at once pass to and invest in the remaining trustee or trustees, and such remaining trustees, or, if there should be a vacancy of two before any appointment, then the remaining trustee may, by an instrument in writing under their or his or her hands, appoint a new trustee and said remaining trustee or trustees shall convey the proper interest in said property to their,

his or her new cotrustee or trustees upon the terms and conditions herein stated, and none other.    The remaining trustees, or when a vacancy of two shall exist, the remaining trustee, whether now or hereafter appointed, may exercise the power of appointment of new trustee or trustees.

" 'Item Twentieth.    I hereby authorize, empower and direct my executor to sell all of my real estate not hereinbefore disposed of, be the same where it may, out of the proceeds of the same and of the assets of the Gilliss estate not otherwise herein disposed of, to build and construct in a substantial manner and in good style an opera house on said lots 209 and 210 on the corner of Fifth and Walnut streets in said City of Kansas, and in front of such building shall be placed in a durable and conspicuous position, a marble block or slab with the name of Gilliss Opera House engraved thereon, and such house, when completed with business rooms on the first floor and for the purpose which its name imports and otherwise, so as to produce rents shall cost not less than one hundred thousand dollars and not more than one hundred and twenty-five thousand dollars, the sum between the limits to be determined by my executors.

" 'Item Twenty-first.    After the devises and bequests hereinbefore made, and after the completion of the Gilliss Opera House, should there be anything, and whatever is left, I direct that my executors use and apply in building a male and female college on the lots hereinbefore set apart for the same and called St. Mary's College; and in building the same my executors will consult the vestry of St. Mary's Church, it being intended that such college shall be an Episcopal institution and under the government of the Episcopal Church.

" 'Item Twenty-second.    Should there not be sufficient of my estate to build the Gilliss Opera House and reserve

the Fry place for the Gilliss Orphan Asylum after the other
devises and bequests hereinbefore those made, then I au-
thorize and empower my executors to sell said lots 209 and
210 and the Fry place together with the other remaining
property after the other devises and bequests hereinbefore
those made, and out of the proceeds purchase another site
for an opera house and orphan asylum and thereon build
such an opera house and asylum as the means will admit of,
following  the directions hereinbefore given as nearly as
may be.'

"That the said testatrix  nominated as executors of said will,
Francis M. Black and Bernard Donnelly, citizens of Kansas
City, Missouri, who duly qualified, and fully administered
and finally settled said estate, and were on the — day of
————, ————, discharged from their trust.

"Your petitioner further states that the said executors,
in accordance with the provisions of said will, did build and
complete an opera house on said lots 209 and 210 in Block
21, in the old town of the City of Kansas, now Kansas City,
County of Jackson, and State of Missouri, the said building
having cost about $125,000; and the same was turned over
to and placed in the charge of the trustees named in the
nineteenth item of said will, viz: John Campbell, William
S. Gregory, and Bernard Donnelly; that the said William S.
Gregory has since departed this life and the said Bernard
Donnelly has long since left this State, and failed to dis-
charge his duties as such trustee; and the defendants,
William L. Campbell and Edward L. Scarritt were duly
designated and appointed as successors to said Gregory and
Donnelly, as trustees of said Gilliss Opera House, and have
long since been, and are now, together with defendant John
Campbell the acting trustees of said opera house, under the
provisions of said will, and they are now leasing, collecting
the rents, and looking after and taking care of said opera

house property. But your petitioner is informed that although there is a gross income from said opera house property of about $3,500 per annum, it is nearly or quite all consumed in paying insurance, repairs and other expenses attending said property. But your petitioner is also informed and believes that in the future, as the financial and business condition of the country improves, and the defendant city grows, said opera house and the store rooms under it will yield something in the way of a net income to be used in support of the said proposed Gilliss Orphan Asylum.

"Your petitioner further represents and states that some of the heirs of said Mary A. Troost, deceased, who are not mentioned in her will, recovered a portion of her estate by proceedings in this court, and there was duly set apart to them a part of the said tract of land known as the "Fry Place" to wit, about one third thereof; and public streets have been put through and located upon said land, until there is now left only four and eighty-five thousandths (4.085) acres thereof, which is accurately described by metes and bounds as follows:"

(Here follows the detail description of property).

"And the title thereto is, by said last will of Mary A. Troost, vested in the defendant, Kansas City, and the said city is in possession thereof, and has been for many years last past, but it is making no valuable or proper use thereof. That when the said estate of Mary A. Troost was finally on the — day of ————, —— settled by her executors, the estate was exhausted and there was no money or other property left in the hands of the executors, or elsewhere, out of which to construct the said Gilliss Orphan Asylum, and there are no means in existence, or in any way provided by said will, by which the charity intended by the said testatrix, Mary A. Troost, can be carried into effect, and no one, authorized by said will, is now in a position to or has any

authority, or means wherewith, to build such orphan asylum, or to take any steps to utilize the said four and eighty-five thousands (4.085) acres of land, or the proceeds of said Gilliss Opera House, for any charitable purpose whatever; and said charitable bequest will fail entirely, unless this court shall exercise its powers as a court of chancery, and by its decrees effectuate the said charitable devise as near to the intention and purposes of the testatrix as may be.

"And your petitioner, the said Women's Christian Association, is able and willing and hereby offers to carry out the provisions of said will, as near as may be, and to effectuate the intention of the testatrix, by building a suitable orphan asylum for children, to be known as the Gilliss Orphan Asylum, or Gilliss Orphan Home, as this court may direct. For the purpose of erecting such building, your petitioner has the right and is willing to use its said endowment fund of $31,000 or such part thereof as may be necessary, provided the prayer of this petitioner is granted as to said "Fry Place" tract, and said opera house.

"But your petitioner further represents and states to the court that the said four and eighty-five thousandths (4.085) acres of land, devised by the said testatrix as a site for such orphan asylum is not suitably situated or surrounded for that purpose at the present time; that since the execution of said will and the death of said testatrix the defendant Kansas City, Missouri, has grown from a small town to a large and populous city of about 175,000 inhabitants, and said tract of land, so intended for such orphan asylum has become surrounded by numerous small dwellings, occupied by tenants of small means, and laborers and employees of different kinds, and numerous children are being reared in the immediate vicinity thereof, and the said property has become quite valuable for the cheaper class of residences and worth probably four or five thousand dollars per acre;

that the same would be inconvenient and expensive to maintain in the heart of the city; taxes would be heavy, and special taxes onerous, without any corresponding benefit to accrue to said orphan asylum on account thereof; all of said tract of land, except one acre, would be subject to taxation under the laws of the State of Missouri and of the defendant Kansas City; and the larger part of said tract of land is far below the average level of Kansas City property in altitude; and near the southern end of said property, is located a large number of railroad tracks and switches, in full operation, and many factories and other buildings of a character to create large quantities of smoke and soot, all of which would render said location undesirable and unsuitable for such children's home; so that the conditions pertaining to and surrounding said tract of land have materially and entirely changed since the death of said testatrix.

"Your petitioner further states that there are about three and one half acres of land situated between Twenty-first and Twenty-second streets and Tracey and Grove streets in Kansas City, Missouri, the title to which is vested in the "Kansas City Provident Trust Association," a charitable association, organized under the laws of the State of Missouri to hold the title of real estate for charitable uses, and said Kansas City Provident Trust Association is willing and ready to convey and agrees to convey said three acres, to whomsoever, and on such conditions as this court may direct and decree, for the purpose of having erected on any part thereof the said Gilliss Orphan Asylum, or Home; *providing* the same shall be placed under the care, control and custody of your petitioner, the said Women's Christian Association of Kansas City, Missouri.   Said tract is known as "Swope Charity Place" and is accurately described as follows."

(Here follows detail description of property.)

"And being the same property conveyed by Thomas H. Swope to the Kansas City Benevolent Trust Association, by deed recorded in Book B 518, at page 103, in the recorder's office of Jackson county, Missouri, at Kansas City. And the said tract of land is well adapted as a location for such orphan's home; it is high and sightly and well surrounded with comfortable homes, and will make an entirely desirable location upon which to build said orphan's home; and the purpose of said will, namely, to establish an orphan asylum, and to perpetuate the name of William Gilliss, the uncle of said testatrix, can be better carried into effect by building upon said tract than upon the original site so provided by said testatrix. Your petitioner says that said four acre tract can be now sold, either for cash, or partly for cash and partly on time, with good security, for the deferred payments, and can either be sold in a body, or can be subdivided and sold in lots, as this court may direct. And your petitioner prays that said tract of land may be ordered sold in such a way as shall seem to the court most likely to produce the best results, and that the proceeds thereof may be given to your petitioner to be used in constructing such an orphan asylum upon the site proposed, as the court may indicate and direct to be erected, and to be called the Gilliss Orphan Home, or Asylum. And your petitioner proposes and hereby offers, in case of such proposed sale of said "Fry Place" to provide the necessary cash and construct said orphan's home, provided your petitioner shall be given the proceeds of such sale, or sales, and the income from said Gilliss Opera House, to be used as a permanent income to support said Gilliss Orphan Asylum when constructed. And if said tract of land shall sell for more than enough to build said orphan asylum, your petitioner prays that the excess may be permanently set apart and dedicated by the

orders and decrees of this court, as an endowment fund to support the said orphan's home, so far as it will go; and in order that the charity created by the will of said Mary A. Troost may be as nearly carried out as possible, your petitioner also prays the court to order and direct that the net proceeds hereafter derived from the said Gilliss Opera House and business stores thereunder, shall be paid over by said trustees, John Campbell, William L. Campbell, and Edward L. Scarritt, to your petitioner, said Women's Christian Association, as a further means of support for and to be used as a permanent endowment fund or income to maintain the said Gilliss Orphan's Home, to be built as herein prayed; and that the said trustees, and their successors, shall be required to account regularly to your petitioner, as the beneficiary thereof, for all moneys received and expended on account of said Gilliss Opera House. And to the end that the object sought in this petition may be more efficiently and more easily carried out, your petitioner prays that an order may be made appointing some suitable person, or persons, as commissioner, or commissioners, to receive and hold the title to said four acres, and that the defendant, Kansas City, may be ordered and directed to convey the title thereto to said commissioner or commissioners, and that said commissioner, or commissioners, may be directed to sell the said land in one tract, or subdivide and plat it under the direction of this court and sell it in lots, and to turn over the net proceeds of said sale, or sales, whether in cash, or in secured notes, to your petitioner, upon such conditions as this court may prescribe for the building, maintenance and support of said Gilliss Orphan Asylum, or Home. And your petitioner asks for such further and other orders, decrees and judgments as may be proper and necessary to carry out the objects and purposes of this proceeding."

The defendants, as shown by the petition, are Kansas City, to whom by the will of the donor, certain lands therein named were vested, to hold in trust for a place for a home for the orphans of said city; the trustees of the Gilliss Opera House, the income of which is by the will devoted to the support of said Orphan's Home; the administrators *de bonis non* of Mrs. Troost's estate, and the Attorney-General, who joins in the prayer of plaintiff's petition, in an answer admitting the existence of all the facts set up in the petition.

Upon a hearing of the facts the court found all the issues in favor of the plaintiff and of the defendant Edward C. Crow, Attorney-General, who, as above stated, in his answer joined in the allegation and also in the prayer of plaintiff's petition, and in accordance with said finding made its order and decree that the said petitioner the Women's Christian Association be and is hereby permitted to direct and carry out the provisions of the will of said Mary A. Troost, with reference to the building of the Gilliss Orphan Asylum as near as may be, by constructing a suitable building, well adapted for the support, custody and training of orphans and destitute children, to cost not less than $20,000, with the funds designated in the petition in its hands and control, in and upon the "Swope Charity Place" in Kansas City, Mo., which said place the court finds has been conveyed to and now belongs to said Women's Christian Association for the purpose among other things of maintaining upon one separate third part thereof a home for orphans and destitute children, and that for the purpose of effectuating the intention of the testatrix Mary A. Troost, and in accordance with her wish, the said Women's Christian Association is directed and required, as one of the conditions of carrying out the trust created by the will, and this decree, that said Orphan's Home to be constructed by it, shall be named and called the Gilliss Orphan's Home, and that the same shall

be so known and designated hereafter, and shall not be known or called by any other name; and that for the further purpose of carrying out the provisions of and in consideration of its decree, the defendant Kansas City is directed and ordered to cause to be executed a deed conveying the Fry Place to one B. F. Whipple of Kansas City, as commissioner of the court, and that said commissioner shall sell said land, and pay over to the Women's Christian Association the proceeds thereof, upon its receipt being given therefor, as in said decree provided, and that same shall be set apart by plaintiffs and become a permanent endowment fund for the maintenance and support of said Gilliss Orphan's Home when constructed by plaintiff, in so far as the same shall go towards that end, less the sum of $4,798 that is ordered to be paid by the commissioner out of the proceeds of said sale, to discharge a lien against said property in favor of Kansas City for advancements made by it while holding the title thereto as trustee, for street improvements made around and about said property, and the further sum of $1,200 ordered to be paid to the attorneys for plaintiff, out of the proceeds of said sale, for their services rendered in behalf of these proceedings, and the commissioner's costs and charges for making said sale not to exceed five per cent of the amount realized thereon.

It was also, further adjudged and decreed that the defendants John Campbell, William L. Campbell and Edward L. Scarritt, trustees for the Gilliss Opera House, and their successor's hereafter, account quarterly to said Women's Christian Association or its treasurer, and pay over to it or its treasurer, the net proceeds arising from the rent from said Opera House and the stores thereunder; that said Women's Christian Association is made and declared to be the beneficiary of said trust so in the hands of said defendant trustees, and that the rents so received by said Women's

Christian Association be used by it for the purpose of aiding in maintaining, supporting and improving said Orphan's Home to be erected under its decree, with the further order that the cause be continued and kept upon the docket of the court for such purpose as may be necessary to fully carry out its decree.

From the judgment and decree thus rendered in the circuit court the trustees of the Gilliss Opera House alone complain, and have prosecuted this appeal, assigning as error, want of jurisdiction in the court over the subject-matter in controversy, defect in parties defendant, no proper party plaintiff, and want of equity in plaintiff's bill.

Much space has been given in the brief filed herein by the learned counsel for appellants, to a discussion of the so-called doctrine of *cy pres* under which the attorney-general as the servant and agent of the king was authorized to take steps in regard to charitable bequests as the king should direct under his prerogative power, all of which is foreign to the issues under consideration here. No question is presented here as to what purpose the charitable bequest shall be used; but it is one merely, as to the manner of using it. No new scheme is to be devised for the purpose of carrying out what might be thought was or would be in accordance with the wish of the donor, the express charity having failed.

It is not asked in this case that one charity be substituted for another, or that the court should make a will for the testatrix and create a trust. A valid charity established by a will can not be carried out exactly as provided in all its details; the Fry Place is not suitable for an asylum, the administrator has practically no funds with which to build the asylum thereon as provided in the will, nor will the land known as the Fry Place if sold bring enough to buy another site and build an asylum thereon as provided might be done under the condition named in the terms of the donor's will

in the event the administrator should find he has not funds belonging to the estate ample to build on said site.

Here it is sought merely to alien a part of the original donation, on account of its changed condition and surroundings, that the proceeds arising therefrom may be used in a manner more advantageous to the charity intended, in connection and conjunction with a similar charity carried on in that city, care being taken that no diversion of the gift be permitted, and that the charity may become a reality instead of as now, a mere thing of paper.

In answer to appellants' first objection, that the circuit court had no jurisdiction over the subject-matter in controversy, it will be conceded at the outset that courts of equity in this country have not as extensive powers as the English chancellor, ordering the king's mere decree and will in the premises, and it may be further granted, for the sake of this discussion if necessary, as contended for by appellants, that the object of the charity provided by the will herein could not be changed by our courts, or one charity be substituted for another. Appellants might maintain, that was a prerogative power, with which the equity courts of this State are not invested, but such questions have no pertinence here. The decree asked for in this case comes so clearly within the jurisdiction of a court of equity that we need not look to or discuss the limits of its powers, but may leave that question to be determined when a close case arises. As said, it is not asked in this case that one charity be substituted for another or that the court shall make a will for the testatrix and create a trust. What the petition recites and what the decree affirms, is simply this: A valid charity, established by a valid will, can not be carried out exactly in all its details; that the land designated as the place for the erection of the asylum is not now suitable for such an institution, owing to the growth and development of the

city around it; that the administrator, who by the will was directed to construct the asylum out of the funds of the estate, has not a sufficient sum on hand belonging thereto to accomplish the work designated, nor will the land known as the Fry Place designated as the site for the asylum if sold yield enough to purchase another site and erect a suitable building thereon; and that if some action is not taken by the court the charity is likely to be defeated by continuous inaction on the part of those having in charge the matter of its execution.

The petition then states the proposal and offer of the petitioners, in case the court will make an order of sale of the Fry Place and give to it the proceeds thereof, together with the net proceeds thereafter to be derived from the Gilliss Opera House, to erect and construct upon a suitable site in Kansas City belonging to the petitioners out of the funds now in its hands, such an orphan asylum as the court may indicate and direct to be constructed, and to call and designate same as the Gilliss Orphan Home and Asylum. Briefly expressed the petition filed herein is but an effort to combine the charity of the donor Mrs. Troost with that of the plaintiff, in order that both may be more surely and readily effectuated; that a slumbering charity of twenty years and more may be awakened and made an active aid to the orphaned poor of Kansas City, as was the original design and intention of the donor expressed in her last will and testament.

Beginning with the early case of Chambers v. City of St. Louis, 29 Mo. 543, decided in 1860, there has been an unbroken line of decisions that the equity branch of our courts has authority and power to mold the form of a charitable devise or gift to suit the necessities of changed conditions and surroundings; that when it has been found beneficial to the charity to alien its lands and vest the proceeds in other funds

or in a different manner, it was competent for the court to direct such sale and investment, so long as no diversion of the gift is permitted, and this exercise of authority has not been predicated upon extraordinary or prerogative powers, for no such powers belong to the equity courts of this State, but the exercise of the power sought, has been that growing out of its general jurisdiction as a court of chancery, having in charge the control of all trusts and charities. Such powers are a part of its equity jurisdiction over trust and charities, and were exercised long before and independent of the enactment of 43 Eliz. Ch. 4, from which statute respondent claims no authority for the courts' assertion of jurisdiction in the present case. A trust without a power in equity to enforce it, would not be a trust, if that expression of it be permissible. Appellants concede that our equity courts could enforce a trust by commanding the trustee to act; by removing him and approving a successor under proper circumstances; and by ordering the execution of it after the death of a trustee. Then why is the court's power arrested when it seeks to enforce the execution of the trust and carry out the general intention of the donor (that must fail on account of an inability to execute same after the exact mode as indicated by the donor as to the particular use of the property), by merely changing the particular manner of the use of the property donated, to accomplish the designated aim, but which must fail, if the exact details are not set aside or modified by the direction of the court? Why should it be said that if the trustee be unable to act because of some fault of his own, he may be discharged and a new trustee substituted by the court to carry out the trust, or why if he dies and can not act, a successor may be named by the court to execute his powers; but if, because of some external difficulty, or because some particular mode designated as to the use of the property can not be executed in all its details,

the court is powerless to act, is wanting in authority to move in the premises? But why discuss now the reason; or why search for the source and emanation of the jurisdiction of our courts of equity over charitable devises and bequests after it has been so long and frequently asserted as one of the cardinal and inherent powers of a court of equity? The court was not wanting in jurisdiction over the subject-matter in controversy.

This brings us to the consideration of appellants' next assignment of error, that there is no proper party plaintiff; that plaintiff is a stranger to the will, and has no interest in the subject of it. This is perhaps technically true, and it is more than probable that if plaintiff had filed its bill naming Kansas City and the other trustees only as parties defendant, this bill would have been dismissed by the trial court because of the want of proper parties plaintiff to have justified its assertion of authority in the premises; but as the case now stands on all the pleadings there is no good reason suggested why the court should not have proceeded as it did, to a final judgment upon the merits of the bill. All the interested parties were before the court, and if it be conceded that the plaintiff had no standing therein of itself as plaintiff, the Attorney-General had ample, and the relief granted was properly in answer to his prayer, if not to that of plaintiff and it was made in answer thereto. While the suit might more properly have been brought in the name of the Attorney-General at the relation of the Women's Christian Association, no particular importance should attach at this time to his being in form a plaintiff or a defendant, since all the necessary and proper parties were brought into court. The Attorney-General was made party to the proceeding by the bill filed herein and by his pleadings joined in asking the same relief as prayed for in the petition. Thus we have a suit wherein all the necessary parties are before

the court and when a properly qualified and authorized person is asking for a decree in a court having jurisdiction over the subject-matter involved, that is sought, on appeal, to be defeated on the ground alone that the initiative was not taken by the proper party in the first instance.    Looking at the case stated and the objects of the bill we see no objection to the action of the chancellor disregarding the form and position of the parties to the action.    The petition filed by plaintiff, if 'of no greater force, may at least be treated as a formal acceptance by it of the duties proposed to be assumed, and that by the decree was finally put upon it.

Appellants' next contention is that there is a defect of parties defendant; that the heirs of Mary A. Troost are necessary to a full determination of the matter involved in this proceeding, and that they have not been joined as either parties plaintiff or defendant is not well taken.

That would be true only upon the theory that the heirs had some interest in the property that is asked to be sold, or that the decree asked to be rendered would make possible that condititition.    That they have no interest whatever in the property involved herein, it is only necessary to refer to the case of Barkley v. Donnelly, decided by this court in 112 Mo. 561.    Both of these contentions have already been decided by this court, in that case adverse to the Troost heirs.    Here, as there, it appearing that the heirs of the donor, having no trust relationship to work beneficial interest under the will or by inheritance in the property sought to be affected, are not concerned in the construction of the will, or of the proceeding looking to a disposition of the property in furtherance of the charity contemplated by the donor.

Where lands have been donated and become vested in a trustee, as herein for charitable uses, neither the donor nor his or her heirs can ever reclaim it, and all right and

interest therein or thereto is gone forever.    Hence neither
the one nor the other is a necessary party to any proceeding
having for its object the sale and disposition of the property
for the benefit of the trust or charity.

But, says the appellant, if the intention of the donor of
the charity herein can be carried out it must be done, and the
*cy pres* doctrine can not be invoked, and, secondly, that the in-
tention of the donor can in fact be carried out.    To the first
proposition no exceptions can be taken provided a reason-
able interpretation be given to it.    The necessity that will
authorize and warrant an order from the court deviating
from the exact plan as indicated by the will of the donor,
need however be only a reasonably necessity and not an ab-
solute physical impossibility.    The second is a question of
fact simply to be determined from the evidence.

With the small sum now in the hands of the executor,
of the donor's estate, a structure of some kind could be
built on the Fry Place to be used as an asylum for the
orphaned poor of Kansas City, provided no part of said fund
in his hands was used to clear the property of the liens
against it for the street improvements around and about the
property, yet who would think such a structure as that was
in the contemplation of the donor Mrs. Troost, at the time
of making her will.    Neither is it practicable now since the
turn in the growth and development of Kansas City to carry
out the provisions of item 22 of the will of the donor
which provided upon certain contingencies for the sale of
the Fry Place and the purchase of another site and the
erection of the asylum thereon with the proceeds derived
from such sale.    The fund would be totally inadequate, the
undertaking would be wholly impracticable and no one
recognizes and appreciates those facts better than the
trustee, Kansas City, who holds the title to Fry Place, and
the executor, who by the terms of the donor's will was to

construct the contemplated asylum thereon. Kansas City, though a party to those proceedings makes no objection to the grant of the prayer of the petition herein, makes no suggestion of the probable or possible performance of the trust in the future, if these proceedings are quashed or delayed. Likewise the executor who though made a party defendant in this action makes no objection to the grant of the relief asked, makes no offer to perform upon his part and shows no means with which to perform, or which if left to time will grow to a sum adequate to the undertaking, and the appellants, who as the mere trustees of the opera house, have no power whatever to perform by building the asylum if they desired, and no means of performing had they desire and power. Indeed it is most manifest from the showing made herein that all parties in any wise connected with the administration of the trust created by the will of the donor are now powerless to act, owing to the change in circumstances and surroundings over which they have no control, and that the general purpose and plan of the donor must ultimately fail if some court having in charge the execution of trusts and charities under its general equity powers, refuses to order its enforcement in some manner essentially the same as provided by the will of the donor, but differing only, as in this case, in the use of additional means and the sale of the land and the use of its proceeds, instead of its use in specie as expressed in one clause of the donor's will.

We think that the order and judgment made by the circuit court herein was clearly within its equity powers, and that it will assist in carrying out the general intention of the donor as expressed in her will and with no loss to those interested in the bequest, except in so far as the decree provided for an attorney's fee to be paid out of the proceeds of the sale of the Fry Place, to be made by the commissioner, as part of the costs of this case. As plaintiff in its own

Toomey v. Supreme Lodge K. of P.

right, unaided by the answer of the Attorney-General, had no standing in the court to have alone justified the court's assertion of authority in the premises, and as its petition was treated as a mere formal offer of acceptance on its part of the duties proposed to be assumed, and that was by the decree put upon it in obedience thereto, and as the relief granted was properly in response to the prayer of the Attorney-General's answer, we think the court was not warranted in imposing upon the proceeds of the estate to be sold, the burden of the expense of the plaintiff's attorneys in and about the preparation of its petition or the trial of the cause in conjunction with the Attorney-General.

For the foregoing reasons the judgment and decree of the circuit court, with the exception indicated, will be affirmed. GANTT, C. J., BRACE, and WILLIAMS, JJ., concur; BURGESS and MARSHALL, JJ., dissent; SHERWOOD, J., not sitting.