# H. B. MOTT et al., Appellants, v. LIZZIE MORRIS.

### Division One, March 28, 1913.

1. **CHARITABLE USE: Nominal Consideration for Deed.** Whether or not the nominal consideration mentioned in a deed conveying property to a charitable use was actually paid, is of no significance.

2. **————: Conveyance to Trustees of Church: Right to Sell.** Where the owners of lots, for a nominal consideration, conveyed them to four named trustees of one church and three of another, as a site upon which to build a church, to be owned and held by the trustees and their successors for the two churches named, and their deed provided that "neither church nor its trustees are to convey away its half interest for other than church purposes" and that "the building to be erected on said lot when completed is to be used as a house of worship by the denominations above mentioned, and when not occupied by either of said denominations said church building may be used by any other Christian church for public worship," the trustees, long after the building was erected and when it was no longer used by any denomination, cannot sell the lot for other than church purposes. The deed created a charitable use, and prohibited a sale of the property for other uses.

3. **————: ————: Reversion and Forfeiture.** On the other hand, while the trustees could not sell said lots "for other than church purposes," if they attempted to do so the lots and the building thereon did not revert to the donors or their heirs. When lands have been donated to charity and the title is vested absolutely in trustees for charitable uses, they are not only inalienable for other purposes, but they do not revert to the donor or to his heirs. Absent a provision in the deed to the contrary, a gift to charity is forever.

4. **————: ————: Right of Heir to Defend.** The heir of the deceased donor, who conveyed land to a charitable use without power of alienation, has the right to ask the interference of a chancellor to preserve the trust.

5. **————: ————: Uncertainty as to Beneficiaries.** The law benignly aids a charitable use by recognizing that in a public charity uncertainty as to the individuals whom the benefit may reach is one of its essential features.

6. ———: **Construction and Enforcement: By Suit to Quiet Title: Estoppel.** Since the title of the property donated to a charitable use is now in the trustees, it is questionable whether a suit by them against the donor's heirs to quiet title under old section 650 is appropriate to a decree construing the words creating the charitable use and denying to them the right of alienation and to the heir a reversion. But as the heart and life of the action is to test out the questions of alienation and reversion, the appellants cannot complain that the trial court decided the issue according to their prayer. Their consent tolled the error.

*Held*, by GRAVES, J., concurring, that a suit to quiet title under old section 650 is not the appropriate action to determine the trustees' right to sell, but as they voluntarily asked the judgment of the court upon that question they are estopped to question the judgment against them.

*Held*, by BOND, J., dissenting, that the trial court under old section 650 could not entertain the trustees' suit to construe the question of their power under the donor's deed to sell the property, nor enter a decree vesting the title in the donor's heir, and the trial court should have dismissed the action, and so should this court.

Appeal from Clark Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED (*in part*).

*J. A. Whiteside* and *W. T. Rutherford* for appellants.

(1) This is not a case where the property is conveyed for charitable purpose leaving the courts to say how far the title to the property is restricted by its having been donated for that purpose. The grantor conveyed the property by warranty deed and by a clause in the deed, specified the restriction he placed upon the transfer of the title and it is this clause the court is called upon to construe. The clause was to prevent either of the two churches from conveying its undivided half interest in the property for other than church purposes, thereby destroying or interfering with the use of it by the other church for church purposes. Our contention is that two churches together

can convey the property and make a good title whether the property is to be used for church purposes or not. In construing a deed the purpose is to ascertain the meaning of the grantor and this should be done from the words he uses. The intent of the parties to the deed should be determined. Long v. Timms, 107 Mo. 519; Linville v. Grear, 165 Mo. 397; Hunter v. Patterson, 142 Mo. 318; Walton v. Drumtra, 152 Mo. 497. Such construction should, if possible be adopted as to render all parts of the deed operative and harmonious. Davis v. Hess, 103 Mo. 36. If the language of the deed will admit of two constructions, the one less favorable to the grantor is to be adopted, the grantee is to be given the benefit of the doubt. Linville v. Grear, 165 Mo. 397; Bray v. Conrab, 101 Mo. 337; Nelson v. Brodhack, 44 Mo. 603. (2) There can be no forfeiture in this case. The grantor specified what restriction he placed upon the transfer of the title to the lot and strip of ground, and did not provide for any forfeiture or reverting of the title. No forfeiture can be construed unless so provided in the deed. Gratz v. Scenic Ry. Co., 165 Mo. 217; Studdard v. Wells, 120 Mo. 29; Morrill v. Railroad, 96 Mo. 179; McAnaw v. Tiffin, 143 Mo. 677.

*W. L. Berkheimer, Charles Hiller* and *John M Dawson* for respondent.

(1) The appellants have no right to sell and dispose of the property as alleged in their petition even if the respondent is not entitled to have the property revert to her and in that view of the case she asks that they be enjoined from so doing. A charity given for a particular purpose cannot be altered or diverted to any other. It must be accepted and retained upon the terms upon which it was given, and no concurrence among the donees can operate to transfer or apply it to any other purpose. McRoberts v. Moudy, 19 Mo.

App. 26; 2 Story's Equity, sec. 1175; Arnold v. Brockenborough, 29 Mo. App. 625; 1 Perry on Trusts, secs. 251-254. (2) There is no provision in the deed authorizing the trustees to sell, incumber or alienate the lands therein described. Unless this power is given by the deeds the lands subject to the trust are inalienable. Lackland v. Walker, 151 Mo. 210. (3) There are other beneficiaries provided for in the deeds: "Any other orthodox or Christian denominations." This land was deeded in trust to the trustees mentioned in the deeds in trust for the purposes mentioned in the deed. The petition and proof shows that it has been abandoned by the trustees and beneficiaries. In such case the title reverts to the donor or his heirs. Henderson v. Hunter, 59 Pa. St. 335; Kirk v. King, 3 Pa. St. 436; Appeal of Gumbert, 110 Pa. St. 496; Venable v. Coffman, 2 W. Va. 310; Scott v. Stipe, 12 Ind. 74; Princeton v. Adams, 64 Mass. 129.

LAMM, J.—The case is this:

In 1881 Mr. Cooper and his wife executed two deeds, for expressed nominal considerations, to five named individuals as "party of the second part," described therein as "trustees for the Methodist Episcopal Church of Wayland City and the Protestant Methodist Church of Wayland City, Clark county, Missouri." These deeds conveyed one lot and part of another in that village, and ran to the named trustees and their "successors and assigns." The

Charitable Use. *habendum* held the usual covenants of warranty, covenanting to "warrant and defend the title to the said premises unto the said party of the second part and unto their successors and assigns forever," etc. In the body of the deeds it is set forth that a one-half interest is conveyed to "said trustees in trust for the Methodist Episcopal Church aforesaid," and the other one-half interest is conveyed

"to said trustees for the Protestant Methodist Church aforesaid." Next follows these provisions:

"This conveyance is made to said trustees, and said lot is conveyed to them for a site or lot upon which to erect a union church, to be owned and held by said trustees and their successors for the two churches above named; neither church nor its trustees are to convey away its half interest for other than church purposes.

"It is further understood and agreed that the church building to be erected on said lot when completed is to be used as a house of worship by the denominations above mentioned and when not occupied by either of said denominations, said church building may be used by any other orthodox or Christian church for public worship."

Say thirty years later seven named plaintiffs bring suit in the Clark Circuit Court. Three describe themselves as trustees of the Methodist Protestant Church, and four as trustees of the Methodist Episcopal Church, both churches being "unincorporated associations." They impleaded defendant as the only heir of the Coopers, who died intestate.

The ostensible object of the suit is to try, determine and adjudge title under former section 650, Revised Statutes 1899. To that end the fact of the execution and terms of the deeds are set forth. It is alleged that a frame church building was erected on the land and thereafter used for church purposes, and that defendant is the sole heir of the grantors. Then follows this frank allegation (in a sense, the life of the bill and proclaiming its purpose), to-wit:

"Plaintiffs further state that they no longer have any use for said premises for church purposes and now desire to sell the same to be used for other than church purposes, but are unable to do so, for the reason that the defendant, Lizzie Morris, claims to have some sort of revisionary interest in said premises, and by reason

of such claim, plaintiffs are unable to sell said prem·
ises.''

Defendant answered admitting that certain of the
plaintiffs are trustees of the one and certain of them
trustees of the other church; that both churches are
unincorporated associations; that the conveyances
were made by her ancestors with the provisions and
for the purposes named in the bill; that a church build-
ing was erected thereon and used for church purposes;
that she is the sole heir of the grantors, but denying
all other allegations. It avers that no consideration
was paid for the conveyances, that they were ''a gift''
to the named trustees for the uses and purposes men-
tioned in the deeds. The answer next repleads the
provisions of the conveyances, setting them forth more
fully than in the bill, concluding as follows:

''Defendant further answering says, that she is
the only heir at law of the grantors of said lot, and
has not, and never did claim any right, title or claim
to said lot except as hereinafter mentioned, the rever-
sion, to-wit: That so being the heir and daughter of
the donors of said lot to said trustees, she has the
right to have the wishes of her father and mother car-
ried out so far as they are stated and requested in
said deed of conveyance and that the same be not di-
verted or put to any use except as the wishes of her
said father and mother in that behalf in said deed of
conveyances expressed. She further says that there
is nothing for this court to construe in said deed, as
the provisions therein are plain and plainly express
the purpose of the grantors therein and their express
wishes as therein stated.

''Defendant further shows the court, that this suit
is brought for the purpose of obtaining a decree of
this court, allowing the said trustees and their suc-
cessors to sell said lots and the building thereon erected
to private parties for the personal purposes of said
parties and not for the purpose of carrying out the

wishes of said grantors, but for the express purpose
of diverting said charitable trust for other and dif-
ferent uses and purposes than those expressed in
said deed and for the purpose of diverting the uses
and purposes of said charitable trust, and that the said
trustees are threatening and will, unless restrained by
a decree of this court, sell said lots and the buildings
thereon erected to private persons for their own pri-
vate uses and in direct opposition and contrary to the
trust therein created by said deed.

"Wherefore this defendant asks that said deed
be construed as therein provided and that this court
refuse to construe said deed and the provisions there-
of so as to enable said trutees and their successors in
office from diverting said trust estate and from selling
the same for other purposes than expressed in said
trust deed and that they and their successors be for-
ever enjoined and restrained from selling said build-
ings and the lots upon which they are erected to any-
one or to any persons contrary to the terms of said
trust as created in said deed and to vest title in de-
fendant and for other proper relief."

The trial proceeded on admissions in pleadings
and those made *ore tenus*; thus it was admitted that
the land was a "donation" to the trustees of the
churches for a "nominal consideration;" that the
Methodist Episcopal Church do not use the building
in question as a place of worship, but now have their
own independent church in Wayland; that the Prot-
estant Methodist Church have not "sufficient congre-
gation to have services and for that reason are not
occupying the church and that all denominations that
hold services at Wayland have houses of worship and
that this church is unoccupied and vacant."

(*Note*: A question being sprung below on the
scope and import of the foregoing admissions, testi-
mony went in *pro* and *con* on the issue whether any

money consideration was actually paid.
On one side it tended to show that none
was paid; on the other to show that the
two dollars expressed in one deed and one dollar in
the other, as money considerations, were actually paid.
The chancellor held that no money consideration was
paid, that the only consideration was the charitable
use.  In the view we take of the case the law would
be the same if there was or was not a nominal money
consideration passed.  What is a *nominal* considera-
tion in the eye of equity but one in name only?  Hence,
the issue is put aside as frivolous.)

*Nominal Consideration.*

The decree found, *inter alia*, that the conveyances
were made for a site for a union church to be held
and owned by the named trustees and their success-
ors; that the building was built and used for church
purposes; that the present trustees desire to sell the
premises for other than church purposes; that defend-
ant claims a reversionary interest in the land if the
same be sold and diverted from the uses for which it
was conveyed and that she is the sole heir of the grant-
ors.  Following those findings it was decreed that
plaintiffs as trustees or their successors in office or
either of them were without power to sell or convey
the premises for any purpose or use other than men-
tioned in the Cooper conveyances, or otherwise divert
the trust.  Then follows this clause in the decree:

"The court further finds that if said trustees or
their successors, or said churches should sell, convey,
or attempt to sell or convey said lot and premises for
any other purpose, than as provided in said deed of
conveyance then and in that [event] the said premises
shall revert and vest in the said, Lizzie Morris, the
defendant herein."

From that decree, plaintiffs appeal.

On such record the questions here are two, viz.:

(1)  Are plaintiffs donees of power to sell the
premises for other than church purposes?  (2) In the

case of such sale, has defendant a reversionary interest?

Those questions are so important and delicate in some possible ramifications, related phases and contingencies that the finger of wisdom points unerringly to one thing, viz., the determination only of the precise case in hand, eschewing a discussion of principles of law applicable to some other case that might be brought looking to other form of relief. We may in part get at what the case is by distinguishing it from what it is not, as questions in logic are determined, or equations in algebra resolved, by elimination.

(a)  Assuming that the Cooper deeds conveyed the land to trustees for the purpose of a charitable use, that the grant was accepted, the church built and used and that such was a public charity as contradistinguished from a private charity, then our case is not one in which the powers of a court of chancery are invoked to regulate a mere administrative detail of the use. Nor is it one where the powers of a court of

Charitable Uses: Distinctions.

chancery (charity being a ward of chancery) are invoked to enforce the beautiful doctrine of *cy pres*, the doctrine of approximation in charitable trusts whereby the intent of a testator or grantor (being impossible or impracticable *literally*) may be carried out as near as possible or as near as may be. Nor is it a case where the Attorney-General is a party as representing the State in the matter of the protection or execution of a public charity. Nor is it a case where, under the pleadings and admissions, the execution of the use has become impossible in fact. The student of jurisprudence curious in that behalf (so that, in order to know the law properly, he may know it by its reason), may consult on such phases: Gaskins v. Williams, 235 Mo. 563; Lackland v. Walker, 151 Mo. 210; Women's Christian Association v. Kansas City, 147

Mo. 103; Sappington v. School Fund Trustees, 123 Mo. 32; Hadley v. Forsee, 203 Mo. 418.

Nor is it a case where the conveyance to a charitable use provided in terms for a re-entry by the grantor, his heirs and assigns upon a breach of the trust, such as was considered in Bredell v. College, 242 Mo. 317. Nor is it, in principle, like that cited by respondent (Henderson v. Hunter, 59 Pa. St. 335) where the land was granted for the erection of a house of worship for the use of the Methodist Episcopal Church ''so long as they use it for that purpose, and no longer, and then to return back to the original owner,'' etc., where it was held that the words of limitation accompany the creation of the estate, qualify it and prescribe the bounds beyond which it shall not endure. [P. 340.] Nor is it a case where the doctrine of rescission could be invoked on the grounds of an entire failure of consideration because of a breach of mutual and dependent covenants; nor one where there were conditions subsequent, the breach of which worked a forfeiture. See Reynolds v. Reynolds, 234 Mo. 144; Haydon v. Railroad, 222 Mo. 126, on such phases.

Our case is simply one where, either on the terms of the Cooper deeds, or on general principles of law, appellants say they have the right to sell for other than church purposes because they *desire* so to do, and they ''desire'' so to do because they have ''no longer any use for said premises for church purposes.'' On defendant's side that right is denied, but defendant also says that if it is exercised then the land reverts to her as sole heir of the grantors.

(b) It is first argued by appellants that, on a proper construction of the cold words of the deed, they have the right to sell and convey for other than church purposes in a given contingency, to-wit, when both groups of trustees jointly make the transfer. That the interdiction in the deed against a sale for other than church purposes by either group was intended to

protect one group or one church against the other, to prohibit a sale for profane purposes by only one and thereby debase or incommode the pious use of the other, and not to inhibit both alienating at one stroke. But is not that view of it more ingenious than sound? If either is prohibited are not both prohibited? The

Charitable
Use: Power
to Sell.

good sense of the thing lies in the answer *yes.* To illustrate in a homely fashion: If a father prohibit either of his two boys from riding a horse, Bucephalus, under the pains and penalties of punishment, would the youths expect to be acquit of disobedience if they rode Bucephalus double? If a mother prohibit to either of her two daughters the reading of Don Juan, would it be allowable for them to construe the interdiction so that they might read it in concert? We opine the construction put on the words of the deed by appellants is too narrow, in that it quite ignores the large question, the master fact, viz., the pious use to which the land was devoted. Such strained and unnatural construction smacks of wringing the words so hard the meaning extracted is bitter, even as the wringing of the nose brings blood. [State ex inf. v. Woods, 233 Mo. l. c. 379.] It is referable, maybe, to the adage: The wish is father to the thought.

(c) That the grant was to a charitable use cannot be gainsaid. [Strother v. Barrow, 246 Mo. 241.] A use to charity is favored by the law. So, perpetuity is of the essence of such use. [Strother v. Barrow, supra; Lackland v. Walker, 151 Mo. l. c. 250.] Absent provisions to the contrary, a gift to charity is forever. It is on such premises that the general rule is deduced that when lands have been donated to

Charitable
Use:
Reversion.

charity and the title is vested absolutely in trustees for charitable uses, as here, they are inalienable for other purposes. Not only so, but in Missouri the rule is, whatever it be in some jurisdictions, that they do not re-

vert to the donor or to his heirs. [Women's Christian Association v. Kansas City, 147 Mo. 1. c. 126-7; Lackland v. Walker, 151 Mo. 1. c. 250; Academy of the Visitation v. Clemens, 50 Mo. 1. c. 171-2.] Whatever the powers of a court of chancery to regulate or preserve in some form a charitable use, the terror of forfeiture is not one of them, except under the guarded limitations that there is no escape from that construction. We cannot say that appellants' power to sell for other than church purposes prospers on any limitation on the general rule known to us.

Take the case at bar. The record shows the value of the land at the time of the original grant was $70 or $80. Presumably the church was built by subscriptions from members of the two associations and the public at large—the widow's mite here and the dollar there. What natural equity could there be in the proposition, that (absent an express provision of forfeiture in the grant itself, as here) those subscriptions, now in the form of the church building, only sprang as mist from here and there to finally descend in consolidated form as a bountiful and fruitful shower of rain upon the estate of this heir to enhance it? And all because the trustees have taken or in the future might take an erroneous view of their powers? Equity is not so lame and halting that it can afford no relief but forfeiture.

(d) Take another view. Conditions subsequent are not favored, because they tend to unsettled estates. Nor are forfeitures favored. Where there is

**Charitable Use: Conditions Subsequent.** no clause of reverter or forfeiture, as here, conditions subsequent do not arise in deeds by mere implication unless the implication is a necessary one. So, whether a provision in question in a deed is a condition precedent or subsequent, or only a covenant, is to be determined in each individual case under no general rule, but only by getting at the intent of the gran-

tor by applying the good sense of the thing and looking to the language of the grant in the light of correct rules of interpretation. [Studdard v. Wells, 120 Mo. 25; Haydon v. Railroad, 222 Mo. l. c. 138, et seq.; Reynolds v. Reynolds, 234 Mo. 144.]

The premises all considered, we are of opinion that plaintiffs are without power to alien the trust estate for any except church purposes, and, on the other hand, that defendant has no reversionary interest under the terms of her ancestors' grant. This does not mean, however, that she has no right to ask the interference of a chancellor to preserve the trust created by her ancestors.

In coming to this conclusion we have not been unmindful of the rule invoked, to-wit, that in cases of doubt a deed must be construed most favorable to the grantee; nor of other propositions urged, viz., that an instrument is to be construed by its four corners, that the intent is the principal thing, that that intent is to be spelled out from all the provisions of the deed, that those provisions are to be harmonized if possible, that when ascertained the intent must be given effect when practicable and not contrary to law. [Hunter v. Patterson, 142 Mo. l. c. 318, et seq.; Linville v. Greer, 165 Mo. l. c. 397; Walton v. Drumtra, 152 Mo. l. c. 497.] There is no ambiguity in this deed. The intent of the grantors and of those who took under the grant is plain. Mere rules in aid of construction fill little office where construction is not necessary.

One observation more: There is a pretty conceit, maybe not without some basis in fact, viz.:

"Never, believe me,
Appear the Immortals,
Never alone."

Accordingly in the analysis and classification of virtues a trio is made, thus: And now abideth faith, hope and charity, these three; but the greatest of these is charity. Agreeable thereto, as said heretofore, the

law favors and nourishes charity. The beneficiaries of it may be somewhat uncertain, the grant a little indefinite, but the law benignly aids the charitable use by recognizing that in a public charity uncertainty as to the individual whom the benefit may reach is one of its essential features. [Hadley v. Forsee, supra, l. c. 427; Chambers v. St. Louis, 29 Mo. l. c. 590.]

In this view of it, if we adopt appellants' contention, what becomes of that feature of the charity, nominated in the Cooper deeds, to-wit, the use of the church by other orthodox or Christian churches when it is "not occupied by either of said denominations?" In construing the deeds that particular use is to be neither ignored, destroyed nor curtailed. The right of alienation claimed is totally blind to it, and for that reason, also, must be judicially repudiated.

To sum up results: In so far as the decree gave defendant a reversionary interest it should be reversed. In so far as it denied the right and power of plaintiffs to sell for other than church purposes it should be affirmed. As the title is now in plaintiffs in trust for the charitable uses named in the Cooper deeds, it is

Charitable Use: Suit to Quiet Title.

questionable whether the form of the action under section 650 is appropriate to a decree construing the deeds and denying the right of alienation for purposes other than church purposes now or in the future. But as the heart and life of this action was the avowed purpose of testing out that very question to clear the way for a sale and conversion of the trust estate now or in the future, plaintiffs can with ill grace complain that the chancellor took them at their word and decided the issue. If it be error to go so far (a question we reserve) then the maxim applies, *Consensus tollit errorem.*

Let the decree be reversed in part and affirmed in part as indicated, supra. It is so ordered. *Woodson, P. J.,* concurs, *Graves, J.,* concurs in separate opinion

in which *Woodson, P. J.*, and *Lamm, J.*, concur; *Bond, J.*, concurs in separate opinion.

## CONCURRING OPINION.

GRAVES, J.—I concur in the opinion of LAMM, J., and put my concurrence on this ground: I do not think the action under old section 650 is a proper action in which to determine the question of plaintiffs' right to sell the trust property, but they have voluntarily asked the judgment of the court upon that question in such form of action and ought now to be estoppel from questioning the judgment entered in such form of action, if the judgment can otherwise be sustained upon the facts. That the facts in a proper form of action would justify that portion of the judgment which precludes them from selling the property for use other than church purposes, is thoroughly demonstrated by the opinion of my brother. That defendant 'has no title is also made plain by the opinion. I therefore concur in the result reached by my brother LAMM, and also in most of his opinion. I simply add that plaintiffs are estopped from questioning the form of action which determined their rights upon the question of their powers. *Woodson, P. J.,* and *Lamm, J.,* also concur in these views.

*(margin note: Charitable Use: Suit to Quiet Title.)*

## SEPARATE OPINION.

BOND, J.—The purpose of this suit, under the guise of an action to try title to land (now section 2535, R. S. 1909), is to construe and enforce a charitable trust by the application of the doctrine of *cy pres*. This is not an apt proceeding for that purpose, especially in view of the fact that this suit was brought prior to the amendment to the act in question, now shown in the revision of 1909. Hence, the trial court should

*(margin note: Charitable Use: Suit to Quiet Title.)*

have dismissed the plaintiffs' suit. That tribunal fell into the error of entertaining the suit and undertook to render a judgment in favor of the defendant, who, admitting by her answer that she had no title to the land but that it was vested in the plaintiffs as trustees, yet set up that in the event it was sold the title would revert to her. The plaintiffs would not be entitled to a decree, even in a proper suit in equity to construe their powers as trustees, to make a sale of the lands, to which they hold the dry title as trustees, for non-charitable purposes. And if such a suit is hereafter brought, doubtless that would be the judgment of the court. The trial court, however, in the present case undertook to vest title in the defendant which could not have accrued at the time of the trial, which, under her answer, she could only acquire upon a contingency which has not happened—the sale of the property in question for a non-charitable purpose. Plainly, therefore, the respondent had no concrete case calling for decision, and the judgment in her favor was erroneous. Under the present state of the pleadings, respondent's interest, if any, has not accrued and is not before this court for review.

I think the judgment of the lower court should be reversed and remanded, with directions to dismiss this suit; and to that extent only I concur in the view of my learned brother.