THE BOARD OF TRUSTEES OF THE HANNIBAL PRESBYTERY OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA, a Corporation, (Plaintiff), Appellant, v. J. E. TAYLOR, Attorney-General of the State of Missouri ET AL., (Defendants), Respondents, No. 41309—221 S. W. (2d) 964.

Division One, July 11, 1949.

418

*Fuller, Fuller & Ely* and *Ben Ely* for appellant.

*May & May* and *F. D. Wilkins* for respondents.

HYDE, J.—Action in equity for a decree declaring that plaintiff is vested with title to land occupied by the Corinth Church in Pike County with power to sell it and use the proceeds for rehabilitation and maintenance of a nearby cemetery and for the work of the Presbyterian Church generally. The Court found against plaintiff's claim and dismissed its petition.

The question in this case is the construction of a deed to this land, which all parties agreed created a charitable trust. The land was purchased and the church (a brick building) built by donations from the people of the community generally. The conveyance was to certain named persons as "a board of managers for Corinth Church" and "to their successors in office as said board of managers for the use and benefit of said church." The deed then recited: "Said Corinth Church is to be in the care of the Cumberland Presbyterian Church with the following restrictions: Said church is to have preference of one-half the time including half the Sundays in each month, the other half ▮▮▮ is to be free for all or any denominations of Christians to occupy and preach in it, to organize other churches and hold regular monthly meetings so as not to interfere with the time herein allowed the Cumberland Presbyterians who are to select and publish what part and how much of each month they wish to occupy said church. When not occupied by other denominations of Christians the Cumberland Presbyterians may occupy said church as other denominations."

The Corinth Church was active for many years. In 1906 the Cumberland Presbyterian Church was reunited with the Presbyterian Church of the United States of America from which it had separated in 1810. Plaintiff is the governing body of the Presbytery in which the Corinth Church is located. There is no record that at any time either the Board of Ruling Elders or the Trustees of the Corinth Church actually put in written form a designation of the dates or parts of the month when said church would be available for other denominations of Christians under the terms of the deed. There is, however, no evidence that any other denomination or group of Christian people ever asked for such use of the building. On a few isolated occasions religious services by other denominations were held without objection in the building, but no other religious group ever formally occupied the church or made any continued use of it.

After 1920, membership decreased and the church was operated on a part time basis but finally became unable to pay for even a part time minister. Aid was secured through the Board of National Missions of the Presbyterian Church and services once a month were continued by this means. In 1934, this aid ceased and no further services (with the exception of one or two funerals soon thereafter) were held by the Presbyterians or by any other denomination during the 14 years before the trial of this case. No repairs have been made on the building during that period. A new roof would probably be required to put it in usable condition. Most of the windows were broken out and much of the plaster had fallen off the walls and ceiling. One of the heating stoves was gone and the locks had been torn off of the doors. There has been trespassing by vandals and the building has been used for drinking and other immoral purposes.

In 1947, at a meeting of the remaining members of the church (27 persons on the church rolls were notified) called for that purpose, it was voted eight to seven to ask the Presbytery at Hannibal to dissolve it; and it has since been so dissolved. Its property has been ordered placed in the hands of the Presbytery's trustees for disposition. Ten former members of the church were permitted to intervene in this suit. They joined with plaintiff in asking for the decree sought. Several of them testified that sufficient support could not be obtained to repair and continue the church. There was a Baptist Church about three miles away, another Presbyterian Church four miles away, and six churches (including a Presbyterian Church) in Clarksville, five miles away. Plaintiff's evidence was that the community had lost population and that the people remaining were not interested in having services in this church.

The cemetery, about ¼ mile from the church, was known as Corinth Cemetery. It was deeded to certain Elders of the Church and their successors in office for the benefit of the church. However, members of the community were buried there regardless of church affiliation. It was kept up by donations of neighbors and others interested in it. The clerk of the church kept the records of the cemetery and sold the lots. . The school building, adjoining the church, burned down several years ago and was not rebuilt. The children of the neighborhood now go to the consolidated school in Clarksville, there being gravel roads from the community to that town. The defendants included some of those who voted against the dissolution of the Church and the granddaughter of the original grantor, but she claimed no right of reverter. Their evidence was that with a reasonable amount of expense and work the church could be put in shape so that services could be held. They believed that some support could be had for repair and use of the church.

The trial court upon request of defendants, filed an opinion as provided in Section 114 (b) of the Civil Code [Mo. Stat. Ann. 847.114 (b)] which contained the following conclusions: "This case is not one where the powers of a Court of Chancery are invoked to enforce the doctrine of cy pres as the object of the charitable trust has not failed. It is true that it has become impracticable for the Presbyterian Church to use the present building but not for the defendants who under the grant have a right to occupy the building as Christians or organize a church. It would be a travesty upon justice for this Court to say that because a certain denomination of Christians have found it impossible to carry on their worship of God in the church building, that all other people of the community would be barred from worshipping God in that building which was constructed and dedicated for the advancement of religions, for all denominations. In view of the conclusions reached, this Court is without the power or authority to order the sale of the lot and building in question. . . . The

trustees having ceased to function, the building being in need of attention, and it being the duty of the Court to see that the property dedicated to charitable religious purposes is not diverted or that the trust fail for want of a trustee, substitute trustees will be supplied by the plenary jurisdiction of the Court.'' The Court appointed two substitute trustees ''to carry out the provisions of said charitable trust and put and keep said building in proper repairs, and report back to this Court from time to time.''

Plaintiff's evidence and brief goes into much detail concerning the organization and ecclesiastical law of the Presbyterian Church to show its right to dissolve the Corinth Church and·dispose of its property. However, the decisive question here is the construction of this deed and the rights of plaintiff under it rather than the construction and application of the law of the church. Clearly plaintiff is not entitled to be vested with the title to this land and, therefore, does not have the right to sell it and use the proceeds for the work of the Presbyterian Church generally. A similar situation was before this Court in Mott v. Morris, 249 Mo. 137, 155 S. W. 434. In that case, land had been conveyed to four named trustees of one church and three of ·another by a deed which provided for them ''to erect a union church, to be owned and held by said trustees and their ·successors for the two churches above named; neither church nor its trustees are to convey away its half interest for other than church purposes.'' This deed contained the following further recital: ''It is further understood and agreed that the church building to be erected on said lot when completed is to be used as a house of worship by the denominations above mentioned and when not occupied by either of said denominations, said church building may be used by any other orthodox or Christian church for public worship.''

In that case, the two named churches no longer desired to use the premises for church purposes and sought a judgment establishing their joint title so that they could sell and divide the proceeds. This Court, considering the above recital, said: ''The law favors and nourishes charity. The beneficiaries of it may be somewhat uncertain, the grant a little indefinite, but the law benignly aids the charitable use by recognizing that in a public charity uncertainty as to the individual whom the benefit may reach is one of its essential features. [Hadley v. Forsee, supra, 203 Mo. l. c. 427; Chambers v. St. Louis, 29 Mo. l. c. 590.] In this view of it, if we adopt appellants' contention, what becomes of that feature of the charity, nominated in the Cooper deeds, to wit, the use of the church by other orthodox or Christian churches when it is 'not occupied by either of said denominations?' In construing the deeds that particular use is to be neither ignored, destroyed nor curtailed. The right of alienation claimed is totally blind to it, and for that reason, also, must be judicially repudiated.'' The provision in the deed herein involved as to the use by other

denominations is stronger and more comprehensive than that in the Mott case.

The American Law Institute Restatement of Trusts states the same rule as the Mott case as to beneficiaries and purposes. [See Sec's. 364, 368 and 371; see also cases cited in Missouri Annotations.] Comment b, under Section 371, states: "a trust 'for the worship of God' or a trust 'for the spread of the gospel,' or a trust 'to promote Christ's kingdom on earth,' is charitable." We must, therefore, hold the provision for the use of the church "to be free for all or any denominations of Christians to occupy and preach in it," and "to organize other churches and hold regular monthly meetings" in it, is a valid charitable purpose which remains after the dissolution of the Presbyterian Church which had used it. Plaintiff's contention that this case is different from the Mott case, on the ground that it also seeks the application of the cy pres doctrine, must be rejected because we think the trial chancellor was correct in finding that the purpose of the trust had not failed. [See City of St. Louis v. McAllister, 281 Mo. 26, 218 S. W. 312; see also Restatement of Trusts, Sec. 399.] It does not sufficiently appear that the use of this church by other denominations of Christians (organized or "to organize") is impossible or impracticable. While it was shown that none have made a request to use it, apparently nothing was ever done to let others know of its availability, except to record the deed. We also hold that the Court properly appointed new trustees to make it available for such use and to encourage such use. [See Restatement of Trusts, Sec. 397.] If such efforts of these successor trustees fail, application of the cy pres doctrine can then be made by the Court in a new proceeding. Whether, in that event, the rehabilitation and maintenance of the Corinth Cemetery would be within the purposes of the charitable trust, established by this deed, should not be decided at this time and on this evidence.

The judgment is affirmed. All concur.