**Frank LOVE et al.,**
**Plaintiffs-Respondents,**

v.

**MISSOURI UNION PRESBYTERY and**
**Brush Creek Cemetery Association,**
**Defendants-Appellees.**

**No. 36243.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Jan. 20, 1976.

Motion for Rehearing or for Transfer
Denied Feb. 26, 1976.

Application to Transfer Denied
April 14, 1976.

McQuie & Deiter, Montgomery City, John C. Danforth, Atty. Gen., B. J. Jones, Asst. Atty. Gen., Jefferson City, for defendants-appellees.

Harry T. Limerick, Jr., Paul M. Peterson, Columbia, for plaintiffs-respondents.

STEWART, Judge.

The late McCune Gill, one of the foremost authorities on titles, is reputed to have said, "There is no title worse than a church title." We here consider proof of that adage.

The subject of our consideration is a two acre tract of land in Montgomery County which is occupied by a building known as The Brush Creek Church.[1]

The plaintiffs are the members of the Board of Trustees of The Brush Creek Community Church, an unincorporated non-denominational Christian Church which was organized on August 6, 1972, and others as individuals. They prosecute this action on their behalf and on behalf of all others who are or may be beneficiaries under an instrument executed by six members of the Spires family on August 13, 1866. They

1. The lengthy description of metes and bounds which is a part of the decree is not

contend that a trust was created for the benefit of the class in the 2 acre tract.

The primary defendants, those taking an active part in this case, are Missouri Union Presbytery which has succeeded to all the rights and interests of Brush Creek Congregation of the Cumberland Presbyterian Church which may have been acquired by that church under the instrument executed by the Spires family, and Brush Creek Cemetery Association, a not for profit corporation to whom Missouri Union Presbytery executed a deed to the two acre tract on October 12, 1972. The Presbytery excepted from the conveyance, the church building which was to be sold to the highest bidder and razed.

Plaintiffs prayed that the court declare the continued existence of the trust provided in the Spires' instrument and that the court quiet title to the tract of land and declare title to be vested in the persons from time to time constituting the trustees of the trust.

The defendants counter claimed by way of quiet title action seeking to have title vested in them.

The court found the issues in favor of the plaintiffs and defendants appeal. We reverse with directions.

■ We review this case on both the law and the evidence and reach our own conclusions. Rule 73.01. *Stallman v. Hill*, 510 S.W.2d 796 (Mo.App.1974). The case was submitted upon an agreed statement of fact, thus there was no conflict to be resolved on the basis of credibility.

The saga of the two acres and the focus of our consideration of this case, both commence with the instrument in writing of August 13, 1866. This is a hand written document which, omitting the signatures and acknowledgement, we set out in full:

necessary to the determination of this case.

"This deed made and entered into this 13 day of August 1866 by and between John Spires and Malvina Spires, his wife, Jonathan Spires and Rebecca A. Spires, his wife, and James Spires and Cynthia A. Spires, his wife, of the State of Missouri and County of Montgomery parties of the first part and Milton Finley and George W. Pew trustees on the part of Brush Creek congregation, of the Cumberland Presbyterian Church, and John D. Anderson on the part of the trustees, on the part of the M. E. Church South, parties of the first second part, Witnesseth that the said parties of the first part, for and in consideration of the desire they have to promote the worship of God and good morals, in the community, and in consideration of one dollar cash in hand to us paid the receipt whereof is hereby acknowledged, have granted bargained and sold, and do by these presents grant, bargain & sell to the said parties of the second part, the following described lot or parcel of Montgomery, towit: Two acres, the land on which, the house known as Brush Creek Church, now stands being part and parcel of west half of the South East quarter, of section thirty five Township Fifty Range four west, to the said Trustees and their successors, in office (who shall be appointed by the respective churches aforesaid) To have and to hold the same forever, for the purpose of having and keeping a house of public worship thereon for the use and benefit of the said Cumberland, Cumberland Presbyterian Church one half of the time, and for the use and benefit of the said Methodist-Episcopal Church South the other half of the time to be free however to be used by all evangelical churches, as a house of worship when not in use for said purposes, by the owners. This deed is made and entered executed in lieu of one heretofore made which is supposed to be destroyed as is to be binding only in lieu and in absence of the one above referred to. In testimony whereof, we have hereto set our hands and seals, this 13 day of August AD 1866."

By way of understatement we can say that this instrument is inartfully drawn.

Preliminarily we take note of the fact that the deed described the land as being in the W ½ of the SE ¼ of Sec 35 Twsp 50 R 4 W. The church is actually situated in the W ½ of the SE ¼ of the SE ¼ of Sec 35 Twsp 50 R 4 W. It is now agreed by the parties that the land intended to be conveyed is readily ascertainable and is in fact the land upon which the present church stands.

It is our obligation in this case to determine who, among the parties to this suit, has the "better" title to the two acre tract of land even though a superior title may be held by a stranger to this action. *Johnson v. McAboy*, 350 Mo. 1086, 169 S.W.2d 932, 934 (1943); *Gaskill v. Cook*, 315 S.W.2d 747, 754 (Mo.1958). See also *Moise v. Robinson*, 533 S.W.2d 234 (Mo.App.St.L.Dist. 1975).

The key to the determination of the central issues in this case is the interpretation of the deed. Did this deed convey an estate in fee simple absolute to the two churches named or did the deed create a public charitable trust in perpetuity?

Respondents have urged that this case is ruled by *Mott v. Morris*, 249 Mo. 137, 155 S.W. 434 (1913) and *Board of Trustees of Hannibal Presbyterian Church, etc. v. Taylor*, 359 Mo. 417, 221 S.W.2d 964 (1949). As discussed hereafter we feel that those cases can be distinguished. From *Mott v. Morris* we do extract some general principles which are useful in our consideration of this deed.

Beginning with the admonishment from *Mott*, 155 S.W. at 436, we confine our discussion to "the determination only of the precise case in hand . . ."

The grantors and the trustees named in the deed are now long deceased. There is no record to indicate that successors to the

trustees were ever appointed by their respective churches.

■ Our purpose is to ascertain the intent of the grantors by applying good sense and looking to the language of the grant in the light of the correct rules of interpretation. In cases of doubt the deed must be construed most favorably to the grantee. It is to be construed within its four corners, and the intent is spelled out from all the provisions of the deed, harmonizing all parts if that be possible. *Mott v. Morris, supra.*

■ We consider first the designation of the grantees. Mr. Finley and Mr. Pew are designated as trustees on the part of the Brush Creek Congregation of the Cumberland Presbyterian Church and Mr. Anderson as trustee on the part of the M.E. Church South. At this juncture we take cognizance of the rule that these churches as unincorporated associations are compelled to hold their property by trustees. The trustees are not designated as a single body of trustees for the churches and members of all other Evangelical churches. The deed specifically designates them as trustees on the part of their respective churches. Their successors are to be appointed by their respective churches. The deed contains the words "grant, bargain and sell" which import the vesting of fee simple title. Sec. 442.420 RSMo 1969. *Nixon v. Franklin*, 289 S.W.2d 82, 88[6] (Mo. 1956). At this point we believe it could be said that the grantors were conveying fee simple title to the property to the two churches in the only manner in which title could be conveyed to unincorporated associations. In the habendum the deed provides that the trustees are to hold the property forever (words indicating complete disposition by the grantors) for the purpose of having and keeping a house of public worship for the use and benefit of the two churches. To this point nothing detracts from the grant of a fee. This portion of the deed merely states the very purpose for which trustees of a church acquire church property under compulsion of law. *Ervin v. Davis*, 355 Mo. 951, 199 S.W.2d 366 (1947).

The following clause in the deed provides that they are to share the use equally. Harmonizing this clause with the granting clause it can only confirm the intent of the grantors to convey the fee in common to the two churches.

We are then met with that clause which provides that other Evangelical churches may use the church when not in use by the owners. If the Presbyterian church is to use the church one-half the time and the M.E. Church is to use it one-half the time and where the fee has been granted to the church, there was no estate remaining which could be conveyed to anyone else. We feel that the intent of the grantor, having granted the fee to the churches placed the later clause in the deed as a precatory admonishment to the owners. That desire on the part of the grantors was carried out so long as the churches or either of them retained title.

Respondent relies on *Mott v. Morris, supra.* In *Mott* the trustees were designated as a body and do not appear to be representatives of respective churches. There is no indication in that case that the granting clause contained the words "grant, bargain and sell" which would have imported a granting of the fee. Most significantly the deed in *Mott* contained the following language: ". . . neither church nor its trustees are to convey away its half interest for other than church purposes." That deed did contain the clause ". . . when not occupied by either of said denominations, said church building may be used by any other orthodox or Christian church for public worship." It is the restriction on alienation coupled with the lack of the fee which stamps that transaction as a charitable trust.

Respondent also relies upon *Board of Trustees, etc. v. Taylor, supra*, which also has many of the characteristics of this case.

The property was conveyed to the "board of managers of Corinth Church" the Presbytery which succeeded to the rights of Corinth Church desired to transfer the property to a cemetery. There was a provision in the deed for use by "all or any denominations of Christians." However, as in *Mott*, there is no indication that the deed contained the operative words "grant, bargain, and sell". In defining the interest of Corinth Church the word "restrictions" is used. The deed provides that the property be conveyed to the board of managers for the use and benefit of the church "with the following *restrictions*: Said church is to have preference of one-half the time including half the Sundays in each month, the other half is to be free for all or any denominations of Christians to occupy and preach in it, to organize other churches . . . [the presbyterians] are to select and publish what part and how much of each month they wish to occupy said church. When not occupied by other denominations of Christians the Cumberland Presbyterians may occupy said church as other denominations."

This was not an unrestricted grant of the entire fee to designated entities; it gives to Corinth only a "preference" as to the time it can use the church. The court in that case points out that "all parties agreed [that the deed] created a charitable trust."

In the case at bar the deed did "grant, bargain and sell" the land to trustees for the respective churches, there were no words of restriction nor condition; there was no provision for forfeiture or reversion. The deed refers to the churches as "owners". The only fiduciary duty imposed upon the trustees was to hold the title for their respective churches. Under the specific factual situation of this case we hold that the deed did not create a charitable trust for "all Evangelical churches" but vested the fee in the trustees of the respective churches to hold for those churches as tenants in common.

■ Some time prior to 1889 M.E. Church South was dissolved and a committee of the Brush Creek Presbyterian Church appointed to secure the interest of M.E. Church South obtained a deed from the trustees of M.E. Church South conveying "real estate in Montgomery County described as: 1 acres in the South part of the Southeast Quarter of the Southeast Quarter of Section 35, Township 50 North, Range 4 West." It was obvious that the intent was to convey all of the interest of M.E. Church South. We need not determine the effect of that deed. As we noted earlier in this case the appellants were not required to show a good title against the whole world but only a title superior to respondents. *Hall v. Hudgins*, 277 S.W.2d 637, 639 (Mo. 1955).

As between the parties to this litigation the superior title to the tract of land in controversy lies with Brush Creek Cemetery Association except for the rights of the Presbytery reserved in the deed of October 1972.

■ In addition to the church building and the tract of land there were also certain items of personal property and fixtures in and adjacent to the church building which are subjects of this litigation. These items were built by individuals and contributed to the church or were purchased by the congregation. These items of personal property would not come within the scope of the conveyance of 1866. They would be the property of the defendant Presbytery in any event. Those items which could be said to have become part of the realty would naturally vest in the owner of the church building. In the view that we have taken all of the fixtures and personal property would belong to the Presbytery.

This cause is reversed and remanded to the Circuit Court for entry of judgment consistent with the views expressed in this opinion.

CLEMENS, P. J., and KELLY, J., concur.