## MOORE et al., Appellants, v. McNULTY et al.

### Division Two, June 28, 1901.

1. **Will:** CAPACITY: MATTER FOR JURY. A proceeding to contest a will is an action at law in which the parties are entitled to a jury; and if the instructions given fairly and fully present the law on the question of capacity, and there is substantial evidence to justify the finding that. he had such capacity, the verdict will not be disturbed on appeal on the ground that it is against the weight of evidence.

2. ———: DECLARATION BY TESTATOR. No particular form of words is necessary for the testator to plainly signify that the instrument the witnesses are required to sign is his last will.

3. ———: EXECUTION BY MARK. The name of the testator may be attached to the will by another by his request and the making of his mark, and by his declaration to the witnesses that it is his will.

4. ———: EXECUTION: BURDEN ON PROPONENTS. The burden is on the proponents to show by the greater weight of the evidence that the paper purporting to be the last will of the deceased was signed by the testator, or by another at his request, and that in the presence of witnesses he declared the same to be his last will; and that at his request they signed the same as witnesses in his presence, and that at the time of signing the same he was of sound and disposing mind.

5. ———: UNDUE INFLUENCE: OUTSIDE SUGGESTIONS. Suggestions to the testator by outside parties, who are in no sense beneficiaries of

Moore v. McNulty.

the will, that he had better make his will, that he was a very sick man and not likely ever again to be well, with no hint as to whom he should give his property or as to how he should dispose of it, is not such undue influence as would justify the court in reversing the verdict of the jury to the effect that there was no undue influence, the instructions being fair and full.

Appeal from Shelby Circuit Court.—*Hon. Andrew Ellison,* Judge.

AFFIRMED.

*R. B. Bristow* and *F. W. McAllister* for appellants.

(1) Plaintiffs' demurrer at the close of proponents' evidence should have been given. First. Because the evidence wholly failed to show that Lear signed testator's name to the alleged will in his presence and by his direction as required by Revised Statutes 1889, section 8870. R. S. 1899, sec. 4604; 1 Underhill on Wills, par. 189, p. 257. The provisions of this statute are mandatory and imperative. St. Louis Hospital Ass'n v. Williams, 19 Mo. 609; Simpson v. Simpson, 27 Mo. 288; Elliott v. Welby, 13 Mo. App. 19; Catlett v. Catlett, 53 Mo. 330; Walton v. Kendrick, 122 Mo. 504. Although testator made his "mark," this is not a signing by the testator himself. Northcutt v. Northcutt, 20 Mo. 266; St. Louis Hospital Ass'n v. Weyman, 21 Mo. 17. There was no evidence whatever that the testator adopted the "mark" made as his signature. This was necessary before it would become the signature of the testator. Stephens v. Stephens, 129 Mo. 142. Second. Because the evidence failed to show a proper signing of the instrument by witness Baker as an attesting witness. The statute requires the will to be attested by two or more witnesses. R. S. 1899, sec. 4604. The rule seems to be that the witnesses must know from the testator that the paper is his will and wit-

ness or "attest" it, as such, at his request.   Odenwaelder v.
Schorr, 8 Mo. App. 467; Cravens v. Faulconer, 28 Mo. 21.
Witnesses attest not the physical act of signing but that the paper
is the will of the testator.    Witness Baker had no word, sign or
deed from the testator himself from which he could know the
paper to which he subscribed his name was his will.    Walton
v. Kendrick, 122 Mo. 525; Grimm v. Tittman, 113 Mo. 56.
Third.    Because there was no publication of the paper by the
testator as his will.    (2) The instructions given by the court
on behalf of defendants, the proponents of the will, were incor-
rect, unfair, misleading and did not properly declare the law.
First.    The first instruction given for defendants assumes the
due execution of the will and entirely omits or ignores the whole
question of undue influence, and tells the jury that if they find
that at the time of the pretended execution of the alleged will
the testator was of sound and disposing mind, they should find
for the validity of the will.    Merton v. Heidorn, 135 Mo. 608.
Second.    The second instruction given for defendants also ig-
nores and omits the question of undue influence, and also tells
the jury that the signing by "mark" of the testator was a suffi-
cient execution of the instrument as his last will.    This was
clearly wrong.    Northcutt v. Northcutt, supra; St. Louis Hos-
pital Ass'n v. Weyman, supra; Stephens v. Stephens, supra.
Third.    The third instruction given for the defendant in effect
tells the jury that they should not consider the fact of discrim-
ination against the natural heirs of testator in the will.    It
should have gone to the jury like other testimony without com-
ment by the court.    The jury had a right to consider that fact
along with all the other circumstances in the case.    Young v.
Ridenbaugh, 67 Mo. 574; Gay v. Gilliam, 92 Mo. 250; Carl v.
Gabel, 120 Mo. 283.    And where no reason for unjust dis-
crimination is shown in the will or otherwise, and there is evi-

dence of undue influence, the burden is on the proponents to show a reason for the discrimination.     McFadin v. Catron, 120 Mo. 252; Maddox v. Maddox, 114 Mo. 35.     Fourth.     The fourth instruction given for defendants which undertakes to define undue influence, is incorrect and prejudicial to plaintiffs. It did not properly define the meaning of "undue- influence." 1 Jarman on Wills, p. 67; 1 Williams on Executors, p. 41; 29 Am. and Eng. Ency. of Law, p. 160.     Any influence, however exercised, which substitutes the will of another for the will of the person in whose name a thing is done, is undue and wrongful.     Dingman v. Romine, 141 Mo. 466.     Importunity which can not be resisted or is submitted to for· the sake of peace is undue influence.     McFadin v. Catron, 138 Mo. 197; 1 Underhill on Wills, par. 125, p. 179.     Under the circumstances in this case, the concluding clause in said instruction, which is as follows: "and not merely the influence of attachment or a desire to gratify the wishes of a friend and neighbor," is wrong and highly prejudicial to plaintiffs.     The act of Hardy and Thomas in insisting upon the old man, whom they believed to be within the very throes of death, making a will when they believed they knew what disposition he would make of his property, was tantamount to and was in effect their insisting upon his making the will that was made.     This was undue influence. Dingman v. Romine, supra; McFadin v. Catron, supra; Underhill on Wills, supra.

*Cleek & Williams* and *W. O. L. Jewett & Son* for respondents.

(1)  Respondents made out a prima facie case by witnesses Hale, Baker, Blackford and Cleek, who proved the testator dictated his will, directed Lear to sign his name, then made his mark and requested that Baker and Blackford sign as witness,

which they did in his presence, and that testator was then of sound and disposing mind. This was sufficient. Fulbright v. Perry County, 145 Mo. 432; Cravens v. Faulconer, 28 Mo. 21; Mays v. Mays, 114 Mo. 536; Walton v. Kendrick, 122 Mo. 525; Morton v. Heidorn, 135 Mo. 614; Grimm v. Tittman, 113 Mo. 64; St. Louis Hospital v. Williams, 19 Mo. 609; Maddox v. Maddox, 114 Mo. 35. (2) Whether requirements of statute have been complied with or not is a question of fact to be determined by the jury. Walton v. Kendrick, 122 Mo. 519; Grimm v. Tittman, 113 Mo. 56. (3) Contest of will is a law case, and appellate courts will not consider the weight of the evidence. Appeal only involves questions of law. Sec. 4623, R. S. 1899; Appleby v. Brock, 76 Mo. 314; Gordon v. Burris, 153 Mo. 223. (4) When the court has once given an instruction specifying what must be proven to establish the will, these requirements need not be repeated in other instructions. Hughes v. Railroad, 127 Mo. 447; Gordon v. Burris, 153 Mo. 223; Lemser v. Manufacturing Co., 70 Mo. App. 209; Meadows v. Ins. Co., 129 Mo. 76; Baustian v. Young, 152 Mo. 317. (5) The court correctly defined "undue influence." Riley v. Sherwood, 144 Mo 354; Jackson v. Hardin, 83 Mo. 175; Myers v. Hauger, 98 Mo. 433; McFadin v. Catron, 138 Mo. 197; Tibbe v. Kamp, 154 Mo. 545. (6) The testimony did not indicate want of capacity—what it must be to show this. Riley v. Sherwood, 144 Mo. 354; Berberet v. Berberet, 131 Mo. 399; Cash v. Lust, 142 Mo. 630. (7) Making a will that is unfair and unjust, is no ground for setting it aside, and of itself does not prove undue influence. Dougherty v. Gilmore, 136 Mo. 414. (8) Presumption is in favor of the validity of the will. McFadin v. Catron, 120 Mo. 253; Gay v. Gillam, 92 Mo. 250.

GANTT, J.—This is an appeal from a judgment of the circuit court of Shelby county establishing the last will of

Charles Moore, deceased.

Charles Moore was a widower and childless. He had for many years prior to his death lived to himself and in the last year or two when he was sick he boarded with Sylvester McNulty. In this manner he became attached to a little daughter of McNulty. McNulty was a poor man and Moore sold him forty acres of land and took his note for $800. He concluded McNulty could not pay for the land and repeatedly said he should not be turned out of the property. Mr. Moore was afflicted with enlargement of the prostate gland and retention of the urine, superinduced by la grippe.

The testator had little or no communication with his relatives, nephews and nieces, and expressed a determination, long before his last illness, not to will them his property. On the day before he died his physician found he was rapidly failing in strength and advised him that if he desired to make any disposition of his property it would be well to do so at once, and a neighbor who had visited him made a like suggestion, but neither indicated how nor to whom he should give his estate. He requested the doctor to send Mr. Lear, a justice of the peace, to his house to draft his will. Lear came and the old gentleman dictated the will, and Lear wrote. He requested two or three of his neighbors to attest the will, which they did. When the will was ready for his signature he sat up in the bed and took the pen to sign his name, but said he was too nervous to write, and thereupon the justice signed his name in the presence of the witnesses, and he made his mark.

By his will he gave his relatives $50, and to Sylvester McNulty he gave the forty acres which he had sold him, and to little Annie McNulty he gave the remainder of his estate, consisting of seventy-five acres of land. The whole property was valued at about $2,300. He was indebted about $500.

The cause was tried to a jury under instructions from the

court and they found the paper writing propounded to be the last will and testament of Charles Moore.

The will was assailed by plaintiffs, who are the collateral heirs at law of the testator, on two grounds: the incapacity of the testator to make a will, and the undue influence of the executor therein named, Jesse Hardy, and Sylvester McNulty and his little daughter Annie, the legatees and devisees named in the will.

To sustain the charge of incapacity, plaintiffs relied upon the evidence that the testator was seventy-two years old when he made the will and died within eight hours after its execution. In his young manhood, Mr. Moore had been a teacher, a man of exemplary habits, and scrupulous in his dress. In his old age, he had lived alone and paid little attention to his dress. He had become subject to periodical attacks of suppression of the urine. The physicians testified that retention of urine results in blood poison, which affects the nerve centers and has a tendency to produce coma and sometimes convulsions. On the evening that he made his will he was weak and failing, but went more rapidly than the physician anticipated. Dr. Smith testified that he discovered "nothing wrong mentally with him." When Mr. Lear, the justice who drew the will, came, the testator was asleep and he expressed the opinion that he (Lear) was too late, but Mr. Hardy aroused him and he then dictated the will. Lear says he was very precise in dictating the will. When he dictated that fifty dollars should be given his relatives, Lear told him to be more definite and name them, he said, "No, let it go that way." "The only thing that impressed me," says Lear, "was by his condition when I got there. . . . He was precise as to making disposition of his property." He named the witnesses and his executor without any suggestion, as he did in naming his devisees and the property he gave them. The scrivener wrote a clause to which he objected and that paper was torn up.

On the other hand, the proponents point to the fact that the testator selected Mr. Lear in preference to Mr. Cleek to prepare his will; that he would not suffer any dictation from Mr. Lear in naming his relatives; that he was precise in making his dispositions, showing that he had the objects of his bounty and his property in mind; "named his executor and the witnesses without suggestion."

He had not lived with any of his relatives for a long time and there is no evidence that they had ministered to him in his old age; he lived in McNulty's family and became attached to the family, particularly the little girl, Annie, and had said before he became sick that he intended to provide for her.

Under these circumstances, it obviously was a question of fact for the jury to determine his capacity to make a will.

At the instance of the contestants the court on this point instructed the jury that it devolved upon defendants, the proponents, "to show by the greater weight of the evidence . . . that at the time of signing, attesting and publishing the said paper writing as and for his last will and testament, said testator was of sound and disposing mind and memory—that is, that he understood the business at which he was engaged—had a mind and memory capable of presenting to him the extent and nature of his property and the persons who were the natural objects of his bounty and of understanding the disposition made of his property by such alleged last will and testament, and that unless they so establish such facts to your reasonable satisfaction by the greater weight of the evidence, your verdict will be for the plaintiffs, Thomas J. Moore et al.," and in another instruction told the jury that if they believed that at the time of signing said paper writing as his will, "Charles L. Moore was old, feeble in mind and body, from sickness or other cause, and had not sufficient understanding and intelligence to transact his ordinary business affairs, and to comprehend the transaction then

in question, the nature and extent of his property and the natural objects of his bounty and to whom he was giving said property, then he had not sufficient capacity to make a will and their verdict would be for plaintiffs." For the defendants the court instructed the jury that "a man has the right to dispose of his property by will as he chooses even to the exclusion of his nearest relatives, and the mere fact that the jury may believe the disposition unjust or unfair will not of itself justify the jury in finding such instrument not the last will of the deceased."

These instructions fairly and fully presented the law on the question of capacity, and as there was substantial evidence to justify the finding that he had such capacity, this court can not interfere with that finding.

A proceeding to contest a will is an action at law, in which the parties are entitled to a jury, and its verdict will not be disturbed on appeal on the ground that it is against the mere weight of evidence. [Garland v. Smith, 127 Mo. 567; Young v. Ridenbaugh, 67 Mo. 589; Lyne v. Marcus, 1 Mo. 410; Appleby v. Brock, 76 Mo. 314.]

II. As to the execution of the will, the court, at the request of plaintiffs, directed the jury that the burden rested on defendants to show by the greater weight of the evidence that the paper writing described in the petition and read in evidence was signed by the testator, Charles L. Moore, deceased, or by T. B. Lear at his (Moore's) request and that at the time of signing the same he declared the same to be his last will and testament in the presence of the witnesses Blackford, Kincheloe and Baker, and that at his request the said witnesses signed said instrument as witnesses thereto in his presence, and at the request of said testator, and that at the time of signing the same said testator was of sound and disposing mind and memory. This was all the statute required and the evidence was ample

to show that each fact required by this instruction to be found was affirmatively proven by the evidence.

The contention that Lear did not sign the testator's name by his direction and in his presence, is refuted by all the evidence on that subject.

Equally without merit is the insistence that Baker did not properly attest the will. The evidence leaves no doubt in our minds that the testator specifically requested Baker to attest the will and that in obedience to that request Baker signed his name as one of the attesting witnesses. No particular form of words was necessary, but that he plainly signified the instrument they were attesting was his last will, we think, was established to the satisfaction of any reasonable mind, and that was sufficient. [Grimm v. Tittman, 113 Mo. 56; Cravens v. Faulconer, 28 Mo. 56.]

III. Although plaintiffs in their petition do not allege that the will was procured through the undue influence of Thaddeus Thomas, the principal portion of their argument on that branch of the case is directed to the conduct of Thomas. Indeed, there is not a syllable of evidence tending to show that Sylvester McNulty or his little daughter exercised any influence, whatever, upon the testator or were cognizant that Thomas or Hardy were exercising any such influence. The evidence discloses that Thomas had known the testator forty-seven years; they were old neighbors and old friends. On Sunday prior to Mr. Moore's death, Thomas, knowing he was sick, went to see him. He said several other neighbors were there and out of the presence of Mr. Moore they discussed his critical condition and some one suggested to Thomas that as an old friend and neighbor he could suggest to Mr. Moore the propriety of making disposition of his property, but no one expressed an opinion how he should dispose of it. Thomas at first declined, but afterwards went in and shook hands with the old man and in-

quired how he was. He said he was better, but suffering greatly in his lower bowels, and said "this is the last year I will stay in Missouri." Thomas told him he was old and very sick, and suggested that he dispose of his property. He then told Thomas his relatives were no use to·him; that he intended to give Sylvester McNulty the forty acres he lived on and the balance to little Annie. As soon as he got able he was going to have it done. Thomas replied it was probable he would never be more able than he was now. "It is no interest to me, but you are a very sick man." He said, "Then in that case it would have to go."

Thomas had no interest whatever in the estate and received nothing by the will. He says he went to see Mr. Hardy, another old friend of Mr. Moore's, and told him his condition, and that he was not likely to live and that if he, Hardy, would speak to him he would probably make his will. Hardy went to see the testator and suggested to him the making of his will, and Mr. Moore said as soon as he was able he was going to make his will. Mr. Hardy told him the chances were he would never get stout enough and said if you want to make a will I will send for some one, and Mr. Moore then named Mr. Lear. Hardy never suggested how Mr. Moore should make his will. According to their evidence, neither the devisees, nor Thomas, nor Hardy at any time sought to influence the testator's disposition of his property. Hardy and Thomas had learned how he wanted to dispose of his property, but the proposed disposition was not brought about by either of them, and was no benefit to either of them.

On this question the court gave plaintiffs the following instructions:

"3. The court instructs the jury that although they may believe from the evidence that at the time of the execution of the paper writing read in evidence in this cause, as and for the

last will and testament of Charles L. Moore, deceased, the said testator was of sound and disposing mind and memory, and of sufficient mental capacity to execute a will, yet if they further believe from the evidence that, at the time of the execution of such paper writing, the mind of the said Charles L. Moore, deceased, was, from disease, age, decrepitude, bodily or mental decay, or other cause or causes, subject to the dominion and control of defendant, Jesse T. Hardy, or defendant, Sylvester McNulty, or any other person, and that they or any other person for them or either of them unduly exercised such dominion, power or influence over the mind and will of the said testator at the time of the execution of such paper writing so as to destroy his free will and energy in the disposition of his property, and so that such disposition of property was not his free will and desire, then and in that event your verdict will be for the plaintiff, Thomas J. Moore et al.

"4.   The court instructs the jury that undue influence such as is meant in these instructions, is an influence that restrains, controls, directs and diverts or coerces the will or overcomes and confuses the mind and judgment, and if they believe from the evidence that defendants, Jesse T. Hardy and Sylvester McNulty, or either of them, or other person or persons in their behalf, by persuasion, importunity or other device or machination, controlled, directed, restrained or coerced the will or confused the mind of the testator, Charles L. Moore, deceased, or confused or overcame his power of judgment upon the true relations between himself and those who are the natural objects of his bounty, in the execution of the paper writing read in evidence as and for his last will and testament, so that said instrument does not express the will, wish or desire of said testator in the disposition of his property, then and in that event your verdict should be for the plaintiff.

"5.   The court instructs the jury that although the mere

fact of discrimination, if you find from the evidence that there is such, against plaintiffs, in the provision of the alleged will read to you in evidence, does not relieve plaintiffs of the burden of proving undue influence, yet where no reason for such discrimination, if you find from the evidence there is such appearing in the will, and there is evidence of undue influence, the burden of proof is on the defendants, to show to your reasonable satisfaction by the greater weight of the evidence, the reasons for such discrimination, if you find there is such.

"6.   The court instructs the jury that in determining whether undue influence was used or exercised to procure the execution of the paper writing read in evidence as and for the last will and testament of Charles L. Moore, deceased, they will take into consideration his mental and physical condition at the time of executing the same, all the circumstances attending such execution, the instrument itself and its provisions."

For defendants the court gave, on this branch, the following instruction:

"4.   The influence exerted upon a testator which would be sufficient to invalidate his will must be such as to amount to over-persuasion, coercion or force, destroying his free agency or will power, and not merely the influence of attachment or a desire to gratify the wishes of a friend or neighbor."

These instructions, with the exception of the fifth for plaintiff, fairly submitted the issue to the jury.   The fifth given for plaintiff is so involved and obscure that we opine it is improperly copied.   As it now stands its only effect would be to confuse and mystify the issue.

The jury found against the plaintiff and there was sufficient evidence upon which to base that finding and this court is not allowed to pass upon the mere weight of the testimony.

We discover no error and the judgment must be and is affirmed.   *Sherwood, P. J.,* and *Burgess, J.,* concur.