ELIZA BURRIER, BIRD WISE, BLANCH BEATTY and MELISSA WALLACE, Appellants, v. E. G. JONES, as Executor of the Will of LEWIS LOWMILLER, and MACON COUNTY, R. WILSON BARROW, as Prosecuting Attorney of Macon County, and W. F. POWERS, ED. A. GATES and W. E. WILKERSON, Judges of the County Court of Macon County.—92 S. W. (2d) 885.

Court en Banc, March 18, 1936.

*Ed S. Jones, William M. Van Cleve, McDonald & Saltsman* and *C. F. Hale* for appellants.

*Dan R. Hughes, John R. Hughes, R. Wilson Barrow* and *Glenn D. Evans* for respondents.

682

BRADLEY, C.—This cause is to construe the will of Lewis Lowmiller who died in Macon County, Missouri, May 23, 1933. The finding and judgment below went for defendants and unsuccessful in motion for new trial, plaintiffs appealed. The appeal was first lodged in the Kansas City Court of Appeals and was transferred here on the ground that title to real estate is involved. [Art. VI, Sec. 12, Constitution; Moore v. McNulty, 76 Mo. App. 379, 164 Mo. 111, 64 S. W. 159; Karl v. Gabel, 48 Mo. App. 517.] Also Macon County is a party, and under Section 12, Article VI of the Constitution, jurisdiction is in the Supreme Court.

The will was written by the defendant, Jones, a notary public, but not a lawyer, and Jones is executor under the will. The will is as follows, except signature and witness paragraph: ''LAST WILL AND TESTAMENT. I, Lewis Lowmiller of the Township of Valley Township in the County of Macon and State of Missouri, being of sound and disposing mind, do make, publish and declare this my last will and testament hereby revoking all wills by me heretofore made.

''1st. I direct that all of my just debts are paid, including my funeral expenses and the recording of this instrument.

''2nd. I give devise and bequeath the remaining part of my estate both real and personal to the Macon County Mo, school funds.

''3rd. I hereby constitute and appoint E. G. Jones of Callao, Macon County, Missouri, to be executor of this my last will and testament.

''In testimony whereof, I have hereunto set my hand this 18th day of October, 1932.''

The testator was eighty-three years old at the time of his death and was never married. He came to Missouri from Ohio when quite young, with John Lyons in whose family he was reared as a foster son. At the time of his death testator owned a farm of ninety acres in Macon County, and had considerable personal property, the greater part of which consisted of government bonds and cash. Plaintiffs are collateral kin of the testator and reside in Ohio. Plaintiffs, Eliza Burrier and Bird Wise are nieces of testator, and plaintiff, Blanch Beatty is a grandniece. Plaintiff, Melissa Wallace is a half sister.

The contention of plaintiffs, appellants here, is that the second clause of the will is void and cannot be construed as creating a charitable trust or use in Macon County to be administered under Sections 12127, 12128 and 12129, Revised Statutes 1929. Defendants contend that the second clause of the will creates a valid charitable trust for the advancement of education, and that the second clause should be construed to mean "that Macon County, Missouri, has been designated as trustee" and that "the trust can be made operative under the direction and control of the judges of the county court of said county, for the use and benefit of the school funds of the county," under Sections 12127, 12128 and 12129, Revised Statutes 1929.

In the petition plaintiffs allege that the second clause of the will which devises the residue of the estate "to the Macon County Mo, school funds" is void "because of the failure of the said testator to designate in said will a donee, legatee or beneficiary of said property capable of taking the same under the laws, of the State of Missouri, and that said clause is void for uncertainty and impossible of execution, and plaintiffs allege that as to all of the property remaining after the payment of testator's debts, the said testator died intestate."

Section 12127, among other things, provides that "each county in this state shall have the power of acting as trustee for charitable uses, and as such trustee to take and hold by gift, grant, bequest or. devise, money and other property, real, personal and mixed, to it given, granted, bequeathed or devised, in trust for charitable uses, and shall have the power, by and through its county court, of executing trusts created in it for charitable uses in as full and ample a manner as an individual."

Section 12128 provides that in all cases where money or other property, real, personal or mixed has been given, granted, bequeathed or devised in trust for charitable uses to any county in this state, or to the county court or to the judges of any county court, whether the names of the judges are or are not inserted in the instrument of gift, "shall be deemed and taken by all courts in this state in law and equity to have been made to the county mentioned in the said instrument, and such county shall be deemed and taken to have been created a trustee by such instrument . . . and shall have the power, by and through its county court, to execute the trust created by such instrument in as full and ample a manner as an individual."

Section 12129 provides that all counties which have been created trustees for charitable uses, together with the trust property, "shall be under the supervision and control of the circuit courts of the respective counties, and said counties, by and through their respective county courts, may at any time apply to their respective circuit courts for advice and direction in the execution of their trusts for charitable uses."

On the theory that the second clause is ambiguous the trial court heard evidence of extrinsic facts and circumstances surrounding the testator at the time of the execution of the will and of his expressed intention to bar his kin from sharing in his estate. On this theory defendant Jones was permitted to testify that testator "came in and said he wanted to make a will and he asked me to write the will. Well, then I questioned him and later put it how he wanted it down, he said 'I want to give it to the Macon County school funds.' I asked him concerning his relatives, if he had any relatives, 'Oh', he said, 'they were all dead'; he didn't mention nieces, he said his brother was dead and his sisters were dead. Then I asked him how he wanted to write the will and he told me and I wrote it just as he said." Mr. Jones further testified that he read the will to the testator and that the testator read it for himself. Tyrene Ward, a witness for defendants, testified that he had a conversation with testator after the will was written and that the testator "asked me what I thought of his will and if I thought it would stand, and I said: 'Mr. Lowmiller, I don't know about it, whether it will stand or not'; I said, 'who wrote it' and he said 'Jones'; he said 'I willed it to Macon County school funds'; I said, 'well, how come you to do it that way' . . . and he said, 'all of you will get some of it that way.' " Testator went to the home of Jerry VanDyke, a neighbor, on December 17, 1932, and remained there till his death on May 23, 1933. While at this home, testator told Van Dyke that he, testator, "had made his will to the Macon county school fund", and that "he didn't want his kinfolks to have nary cent he had for they hadn't treated him right."

■ The function of a court is to construe a will and not to make or rewrite one for the testator under the guise of construction. [69 C. J. 42; Scott v. Fulkerson, 332 Mo. 734, 60 S. W. (2d) 34; Grenzebach v. Franke, 315 Mo. 392, 286 S. W. 79.] If a will expresses the intention of the testator in clear and unequivocal language there can be no occasion for construction, but if when read from the four corners there is doubt as to what the testator intended, then resort may be made to the rules of construction to aid in determining the intention of the testator. Our books are flush with expressions of the rules for the construction of wills and among the many clear statements of the law pertinent is found in Grace v. Perry, 197 Mo. 550, l. c. 559, 95 S. W. 875, as follows: "The controlling rule in construing wills in this State, to which all technical rules of construction must give way, is, to give effect to the true intent and meaning of the testator as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention, the relation of the testator to the beneficiaries named in the will and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will read as near

as may be from his standpoint, giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted, and sentences transposed.''

And in McMahon v. Hubbard, 217 Mo. 624, l. c. 637, 118 S. W. 481, the law is written thus: ''Among the cardinal rules often invoked by this court in the construction of wills is the presumption that the testator intended to dispose of his whole estate. This presumption seems to amount to this, that where there is a general intention appearing in the will to thereby make a complete disposition of all of the testator's property, such general intent is allowed weight in determining what was intended by a particular devise that may admit of enlargement or limitation. [Watson v. Watson, 110 Mo. l. c. 171.] Whatever may be the rule in other states, it is well established in this State that in pursuing the general presumption and to prevent the happening of the incongruous condition of the estate passing partly by will, and partly by descent, words may be supplied, transformed or changed in the will so 'that the instrument may not perish and the manifest intent of the parties be not defeated by the palpable error of the scrivener.' ''

There is no controversy about the rules of construction, but as appears, a will may not be made or rewritten under the guise of construction. Charitable trusts are the favorites of equity and will be construed as valid when possible ''by applying the most liberal rules of which the nature of the case admits,'' and such trusts ''are often upheld where private trusts would fail.'' [11 C. J. 307; Buckley v. Monck (Mo.), 187 S. W. 31; Mott v. Morris, 249 Mo. 137, 155 S. W. 434; Hadley v. Forsee, 203 Mo. 418, 101 S. W. 59, 14 L. R. A. (N. S.) 49 and note.]

In the instant case there is no ambiguity in the language of the will. It is clear from the will as to what the testator intended. It is clear from the will that testator intended to do just what he did do, viz., devise the residue of his estate ''to the Macon County Mo, school funds.'' The punctuation and lack of punctuation does not obscure. in the least what was intended, hence all the extrinsic evidence admitted was incompetent.

Robinson et al. v. Crutcher et al., 277 Mo. 1, 209 S. W. 104, is quite similar on the facts to the instant case. The residuary paragraphs in question in the Crutcher case were as follows:

''Fourth. The residue of my property of whatsoever kind and wheresoever situate I will and direct shall be divided into three equal parts.

''Fifth. One of such third parts I give and bequeath to the capital of the township school fund of T. 54, R. 10 in Monroe County, Missouri.

''Sixth. One of such third parts I give and bequeath to the capital of the public school fund of Monroe county.

"Seventh. One of such third parts I give and bequeath to the capital of the public school fund of the state of Missouri and I direct my executor to pay over to the lawful custodians of the several public school funds mentioned in this and the two preceding clauses of this will the several shares given to said school funds as aforesaid."

The Crutcher case was en banc and it was there held that: "In the creation of a charitable trust, it is essential that there be a separation of the legal estate from the beneficial enjoyment of same. . . . This separation must be indicated by the words of the donor, otherwise the equitable and legal estate will meet in the same person, and the trust be extinguished by a merger of the equitable estate." As supporting the law so stated the court cited 5 Ruling Case Law, 295; Doan v. Vestry of Parish, etc. (Md.), 64 Atl. 314, 7 L. R. A. (N. S.) 1119, 115 Am. St. Rep. 379. It was pointed out in the Crutcher case that the testator's will named the *capital* of the township, county and State school funds as the donees, and that the word *capital* as used had no significance other than that generally given to it as applied to public or private funds.

The court in the Crutcher case said: "Neither directly or by reasonable implication is a donee designated who can take the legal title to the funds bequeathed and thus authorize the appointment of a trustee. The utmost that can be said of these provisions under a liberal interpretation of same is that it was the purpose of the donor to add money to money for the benefit of education. The language employed in the will being free from doubt, no room is left for a construction by implication which would insert the names of those clothed by the statute with the general custody of school funds, under the rule that where a trust is expressed the party in whom the legal title is vested will be held to be the trustee for the reason that there is no such vesting of title of the funds bequeathed in any natural or artificial entity, as is required to create the trust. Hence it would become necessary, to sustain the same, to write into the will, otherwise clear and unambiguous, the names of the donees who would take the legal title to the funds bequeathed. This, in effect, would result in a making instead of a construing of the will, and even under the ample power given a court of equity to sustain a trust, such a course, in the presence of the unmistakable language employed, would be unauthorized. [Sec. 583, R. S. 1909; Trigg v. Trigg, 192 S. W. 1011; Peak v. Peak, 195 S. W. 993; Deacon v. St. L. U. T. Co., 271 Mo. 669, 197 S. W. 261.]"

And the court in the Crutcher case goes on to say that it was contended "that the language employed by the testator in the seventh clause, directing his executor to pay over to the lawful custodians of the public school funds, mentioned in the fifth, sixth and seventh clauses of the will the several shares therein given to said funds, con-

stitutes a sufficient designation of the donees to characterize the bequests as charitable trusts. This direction, unless we disregard its plain terms, in which is involved a necessary reference to the express provisions of the clauses in controversy, does not sustain this contention. In conformity with these clauses the direction provides for the turning over of the shares to the custodians named, not those which had been given to them, because none had been given, either in terms or by implication, but those which had been given to the school funds aforesaid. The effect of this provision is to emphasize the designation of the donees as expressed in the clauses themselves, and that it was the purpose of the donor to bequeath these shares of his estate to the school funds themselves, and not to the legal custodians of funds of like character. In short, the part of the will under review provides for a bequest to and not for the funds in question."

In the Crutcher case it is said that "as to the power of the county court, within the statute (Sec. 3746, R. S. 1909, now Sec. 12127, R. S. 1929) to act as trustee under a proper state of facts, there can be no question," but it was held that the necessary facts did not exist, and further, it was held that the attempted application of Section 3747, Revised Statutes 1909, now Section 12128, Revised Statutes 1929, to the construction of the will there in question, could not be made because of the absence of the creation of such a charitable trust as would permit "the names of the judges of the county court to be inserted as custodians of the shares bequeathed to the county school fund." The *cy pres* doctrine was invoked in the Crutcher case and of this the court said: "The doctrine of *cy pres*, or that of approximation, is invoked to sustain the validity of these bequests. We have, in discussing other phases of the matter at issue, adverted to the uniformly liberal construction given to testamentary donations, due to the policy of courts of equity to declare valid, if possible, gifts to charity. It is in the exercise of this general power that the doctrine of *cy pres* is authorized that the intent of the donor, if found impossible of execution, may, under the order of the court, be carried out as near as possible. [Mott v. Morris, 249 Mo. l. c. 145, 155 S. W. 434.] An essential to the application of this doctrine is the ascertainment from the language employed in the donation, as to who was intended to take as trustee. If the taker, although in the instant case in a sense tangible so far as mere money can be so considered, has within the meaning of the law no legal entity, either natural or artificial, then the doctrine of *cy pres* cannot properly be invoked, because that cannot be approximate which does not exist; or, put differently, with the same effect as to the conclusion reached, in the absence of such a taker as the law authorizes, no trust is created, and, absent the creation of a trust, there is no room for the application

of the doctrine of *cy pres*. [Catron v. Scarritt Coll. Ins., 264 Mo. 1. c. 728, 175 S. W. 571; Mott v. Morris, 249 Mo. 1. c. 145, 155 S. W. 434; Crow ex rel. Jones v. Clay Co., 196 Mo. 269, 95 S. W. 369; Lackland v. Walker, 151 Mo. 210, 52 S. W. 414; Women's Chris. Assn. v. Campbell, 147 Mo. 103, 48 S. W. 960; Campbell v. Kan. City, 102 Mo. 326, 13 S. W. 897, 10 L. R. A. 593; Mo. Hist. Soc. v. Academy of Science, 94 Mo. 459, 8 S. W. 346; Schmidt v. Hess, 60 Mo. 591; Acad. Vistn. v. Clemens, 50 Mo. 167.]"

The majority opinion in the Crutcher case was by Judge WALKER. Three judges concurred, one not sitting and two dissented in a separate opinion by Judge WILLIAMS. The dissenting opinion held that: "By the terms of the will the legal estate in the property devised or bequeathed in paragraphs fifth and sixth (the present suit did not involve the bequest in paragraph 7) becomes immediately vested in the statutory custodian of the respective school funds, and the equitable title or beneficial enjoyment thereof is vested in the persons who by statutory law become now, or are hereafter, entitled to receive the benefits from the respective school funds." The minority opinion further held that the terms upon which the trust was to be administered "are to be found in the statutory law of the State which definitely and accurately prescribes the manner of applying and the uses to which such funds may be put. Under such conditions the statutes prescribing the method of administering and the uses to which such school funds are to be put are as much a part of the will as if they had been literally copied into the same."

The majority opinion in the Crutcher case, in the conclusion reached, is out of line, we think, with the weight of authority, and what was said in Doan v. Vestry of the Parish, etc., supra, relied upon in the Crutcher case, as to the separation of the legal and equitable estates, was perfectly proper, but as we read the opinion in the Doan case it is, in our opinion, no authority on the point in the Crutcher case, nor is it in point in the instant case. The Doan case was in ejectment. Lucretia E. Van Bibber, owner of the land in question, erected buildings thereon and thereafter, on September 25, 1892, conveyed to the defendant, Order of the Holy Cross, so long as it should use said land "for the corporate purposes mentioned in its certificate of incorporation," with a proviso that if it should cease to use the property for such corporate purposes, then the title would revert to grantor, her heirs and assigns. The grantee, the Order of The Holy Cross, entered into possession and used the property for its corporate purposes until April 24, 1905, when it abandoned the use for its corporate purposes. Lucretia E. Van Bibber died testate February 8, 1896. In her will she recited the conveyance of September 25, 1892, and the proviso, and stated in the will her desire to make disposition of the property in the event that the grantee in the deed ceased to use

for corporate purposes, and directed that in such event, "I give and devise said land . . . to the Vestry of Ascension Church, Ascension Parish, in Westminster, Carrol county, Maryland, to be used for such church purposes as the rector of said church shall or may direct, it being my purpose and desire that the said land and buildings thereon shall be under the control of the rector of the Ascension Church, and shall be used for such church work as he may deem for the best interest of Ascension Church."

When the grantee in the deed ceased to use the property as in the deed provided, it surrendered said property to the devisee, the Vestry of the Parish. It was the contention of plaintiffs that the devise created a trust, and that the trust was void, "because its objects are not ascertained, and also because, even if ascertained, it is a perpetuity." The defendants contended "that the devise is of a fee-simple estate, to the Vestry of the Parish of the Ascension, and not a trust, and that the only construction of the subsequent clause relating to the control of the said land and buildings by the rector of the parish is that it is an attempt to ingraft upon the fee a naked collateral power to cut down the fee, to which the law will not permit effect to be given." It was held that no trust was created by the Van Bibber will; that by the devise the Vestry of the Parish of the Ascension took the fee for its own use. In the course of the opinion the court said: "It is obvious that there is in this will no express declaration of any trust, and, if any can be declared to exist, it must rest upon implication derived from the language of the will; and it is contended by the plaintiffs that the words following the devise to the vestry, viz.: 'to be used for such church purposes as the rector of such church shall or may direct, it being my purpose and desire that the said land and buildings thereon shall be under the control of the rector of the Ascension Church, and shall be used for such church work as he may deem for the best interest of Ascension Church', creates a trust for indefinite purposes or beneficiaries. Let us see, then, what is meant by the 'church purposes' and 'church work' which is here referred to. If there were anything in this will to justify the conclusion that Miss Van Bibber meant thereby general or diocesan missions, or any of the charitable or religious objects which the Christian church at large is concerned in, there might be ground for holding that The Vestry of the Parish of the Ascension of Carroll County was not designed to take the beneficial interest in the property devised to it, and was only designed to be the administrator of its benefits to these indefinite beneficiaries; but this intention must be deduced from some rational and substantial analysis of the will, and not from abstract speculation merely."

The English Statute of charitable uses, 43 Elizabeth, Chapter 4, and the principles of applicable law which antedated the statute

are in force in Missouri. Buchanan et al. v. Kennard et al., 234 Mo. 117, l. c. 134, 136 S. W. 415, and the courts of this State administer trusts for public charities upon the general principles of the statute with liberal interpretation. [Chambers v. St. Louis, 29 Mo. 543; Sandusky v. Sandusky, 261 Mo. 351, 168 S. W. 1150; Sappington v. School Fund Trustees, 123 Mo. 32, 27 S. W. 356; Mo. Historical Soc. v. Academy of Science, 94 Mo. 459, 8 S. W. 346; Jones v. Patterson, 271 Mo. 1, 195 S. W. 1004.] And in Mo. Historical Soc. v. Academy of Science, supra, the court said: ''Any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightenment, benefit, or amelioration of the condition of mankind, or the diffusion of useful knowledge, or is for the public convenience, is a charity within the meaning of the authorities cited, and it is none the less a charity because not so denominated in the instrument which evidences the gift.'' It is pointed out in Mo. Historical Soc. v. Academy of Science, supra, that courts of equity in this country, in the absence of legislative authority, have no prerogative powers, as is sometimes exercised by such courts in England, but that an equity court in this country may exercise similar powers as belonging ''to its general jurisdiction as a court of chancery.''

It is stated in 2 Bogert's Trusts and Trustees, section 434, page 1302, that there was a class of cases concerning which the English courts held that relief must come from the crown and that this class were those in which a gift was made merely ''to charity'' or ''to the poor,'' without mention of the trust or trustee. It is further stated in this text that several cases of this type have arisen in the United States where the courts have been faced with the problem whether to hold the gift valid and supervise its execution or treat it as void; and it is stated that in nearly all of such cases, the courts of this country have held such gifts valid by appointing a trustee or directing the framing of a scheme for the administration of the gift. In Elliott v. Quinn (Neb.), 189 N. W. 173, it appears that the testator devised certain property to a trustee for the use of the testator's sister for life and at her death, the property—real estate—''shall become a part of the school fund of Clay County, to be invested in good securities, the interest whereof shall alone be used for school purposes.'' It was held that the will devised the property, or rather the remainder, to the school fund of Clay County and that it was the intention of the testator that said property should be sold and the proceeds invested in good securities, the income therefrom to be used for the benefit of the school fund.

In Chapman v. Newell (Iowa), 125 N. W. 324, the will there concerned, after making certain bequests and devises proceeded: ''All the rest and remainder of my estate, including the proceeds of the land sold and after payments of the legacies above named, I give, de-

vise and bequeath absolutely and without reservation to the permanent school fund of Louisa County, Iowa.'' In subsequent paragraphs, the testator provided for the appointment by the court of a trustee. The residuary clause of the will in the Chapman case was challenged on the ground that there was no such school fund as mentioned in the will, and that the devise was not to any person or corporation capable of accepting it and was void. It was conceded that the statute had not created a fund specifically designated as a ''county permanent school fund,'' but the court observed that there was no rule more firmly established than that a charitable gift is not invalidated because of any mistake or ambiguity in expressing its purpose or describing its beneficiaries, if from the language of the will, construed in the light of all the facts and circumstances surrounding the devise, the intent of the donor is reasonably apparent. The residuary clause involved in the Chapman case was held valid.

In While v. Mayor et al. (N. J. Eq.), 103 Atl. 1042, a devise ''to the fresh air fund of Newark, N. J.'' was held good. In Klumpert v. Vrieland (Iowa), 121 N. W. 34, a devise to the poor of Voorst, Gelderland, Netherlands,'' was held valid. In Moore's Heirs v. Moore's Devisees (Ky.), 4 Dana, 354, 29 Am. Dec. 417, the testator empowered his executors to sell any or all of his estate for the benefit of his wife and son, Thomas, then an infant, and directed that his son should have two-thirds of the estate when he reached twenty-one years of age, and his wife the remaining third for life, remainder to his son, and then the will provided: ''In case my son Thomas should depart this life before he arrives at age, then the estate devised to him I desire may be converted into a fund for educating some poor orphans for this county (Harrison), to be selected by the county court, who are the guardians of such, and to be confined to such as are not able to educate themselves—that it may do as much good in that way as it can, I desire the funds shall be taken and loaned out at interest, so as to be rendered a perpetual fund, and the interest only to be applied to their tuition—thereby affording a partial good to as many orphans as the scanty pittance will allow.''

The son, Thomas, died shortly after the death of the testator, and the heirs at law of the testator claimed the property devised to Thomas on the theory that ''the contingent devise to the use of the poor orphans of Harrison county was void.'' The trust was held valid, the court saying: ''We are strongly inclined to the opinion that the devise is not void for uncertainty, if tested by the doctrines of the common law alone, and might be enforced by a court of equity, under its general jurisdiction over trusts, and the execution of powers connected with beneficial interests. Such a jurisdiction, upon original bill, whether the trust was deemed a charity or not, had been established in the time of Lord Ellesmere, at least five years prior to

692

the enactment of the statute of 43 Elizabeth. [Philadelphia Baptist Association v. Smith and Robertson, 3 Pet. 481; McCartee v. Orphan Asylum Society (N. Y.), 9 Cow. 437; Witman v. Lex, 17 Serg. & R. 88 (17 Am. Dec. 644); Attorney General v. Mayor of Dublin, by Lord Redesdale, 1 Bligh (N. S.) 347; Dartmouth College v. Woodward, 4 Wheat. 518; Attorney General v. Utica Insurance Co., 2 Johns. Ch. 389; Baptist Association v. Hart's Exrs., 4 Cond. R. 383; 4 Wheat. 1.] These cases, and many others which might be super-added, show that, independently of the statute of 43 Elizabeth, a court of equity might enforce a trust, whenever it was defined by the donor, or was so described by him as to enable the court, consistently with the rules of law, to ascertain and apply it to the objects intended.''

Other cases are cited under Section 434, page 1302, Vol. 2, Bogert's Trusts and Trustees, but we do not deem it necessary to review other cases. In the notes under Section 434, page 1302 of the text cited, the case of Robinson v. Crutcher, supra, is referred to and of this case it is said that it seems to be ''contra and less desirable.'' It is our conclusion that the minority opinion in the Crutcher case correctly states the law applicable to the instant case. Reaching this conclusion it follows that the judgment below holding valid the charitable trust created by testator, Lowmiller, should be affirmed and it is so ordered.

PER CURIAM:—The foreging opinion by BRADLEY, C., in Division One is adopted as the opinion of the Court en Banc. All concur.